**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**



5-2-00
8c

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

APR 2 8 2000

PER ____ DEPUTY CLERK

| | |
|---|---|
| (Inmate Number) | : |
| AP-9156 | : |
| (Name of Plaintiff) | : |
| Walter Pemn, Inpropria Persona | : |
| (Address of Plaintiff) | : |
| Drawer K, Dallas, PA  18612-0286 | : |

**(Case Number)**

# 1 : CV00-0771

**COMPLAINT**

vs.

Ben E. Varner, David H. Larkins,

Kenneth Burnett, Hinsel Deitrich,

Donald Jones, Lt. Cebrick, (CONTINUED-

**(Names of Defendants)** ON REVERSE SIDE...)

RECEIVED
SCRANTON

APR 2 6 2000

PER ____ DEPUTY CLERK

## I. Previous Lawsuits

**A.** If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned: Civil Right's Complaint, pursuant to 42 U.S.C. § 1983, filed

December 1996; No. 97-0019, Eastern District of Pennsylvania.

Case assigned to the Honorable Judge, Jan E. DuBoise.

## II. Exhaustion of Administrative Remedies

**A.** Is there a grievance procedure available at your institution?
 X Yes _____No

**B.** Have you filed a grievance concerning the facts relating to this complaint?
 X Yes _____No

If your answer is no, explain why not _____

_____

**C.** Is the grievance process completed?  X Yes _____No

III.  Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank.  Use Item B for the names, positions and places of employment of any additional defendants.)

A.   Defendant _____ Ben E. Varner, _____ is employed

as __Superintendent__ at SCI-Dallas, Drawer K, Dallas, PA

B.   Additional defendants David H. Larkins, (former-superintendent) at SCI-Dal-

las, Kenneth Burnett, Grievance-Coordinator, at SCI-Dallas, Hinsel-

Deitrich, Corrections Officer, at SCI-Dallas, R. Long, Corrections Of-

ficer, at SCI-Dallas, Donald Jones, Hearing-Examiner, at SCI-Dallas--

( CONTINUED ON ATTACHED PAGE...)

IV.  Statement of Claim

(State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

1.   This matter involves incidents of arbitrary and capricious retaliation

against Plaintiff, for his filing of an administrative-grievance; and,

subsequent criminal-complaints, with the Luzerne County, District At-

torneys Office, concerning certain prison-personnel.

2.   Plaintiff was denied his right of access; and to procedural due process,

in the Quasi-Judicial forum, established by the Department of Correct-

ions("DC-ADM 804") for redress of grievance's, pursuant to Department

of Corrections Policy and Administrative-Directive-804 ("DC-ADM 804").

3.   On July 25,1999, Plaintiff filed an official inmate-grievance and put

it into G-Units Mail-Box, said grievance was required to be processed

pursuant to ("DC-ADM 804").(See copy of "DC-ADM 804")(Attached hereto

as Exhibit "A" and incorporated herein as though fully set forth).

( CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-III.B)

-Lt.Cebrick, Security Officer, at SCI-Dallas, Lt.Sutliff, Security Officer, at SCI-Dallas, Bonita Malloy, Unit-Manager, at SCI-Dallas, and Martin F. Horn, Secretary/Director, of the Department of Corrections, in the State of Pennsylvania, he is responsible for the over-all operation of the Department; and, each Institution under its jurisdiction, including the State Correctional-Institution at Dallas Pennsylvania.

(ALL) Defendant's are sued individually and in their Official-Capacitie's

---

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

4. On July 30,1999, Officer Hinsel Deitrich, approached Plaintiffs cell, in his possession he displayed the original and attached copie's, of Plaintiffs legally-filed official-inmate-grievance. (officer's assigned to work the Unit's have no-key's to the "mail-boxe's".); at this period in time, officer Deitrich, had no legal-authority to have said grievance in his possession. (the only time an Officer might have an inmates-grievance in their possession, is after the-Grievance-Officer has rendered a decision and the response is being returned-to the inmate).

5. According to the fabricated, belated and un-timely response of grievance-Officer Burnett, his opinion wasn't issued until August 9,1999, well beyond the "Time-Period," within which Plaintiff could have filed an "Appeal" to any adverse opinion.(See copy of grievance-officer's response, attached hereto-as Exhibit "B" and incorporated herein as though fully set forth).

6. On July 31,1999, Plaintiff was informed by an Officer Bolker, of G-Unit's 6-2-shift,(Not a party to this action) that he had engaged in an informal-phone conversation with Grievance-Officer Burnett, who, according to Officer Bolker,

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

Mr.Burnett stated:   "Had Penn not included the race issue in his grievance, I would have caused the requested memorandum to be issued, but because of the race issue, I'M 'Throwing it away'." There exist no provision in the("DC-ADM---804") guidelines, policy and directive, that allows for the  "Throwing-Away," of an inmates grievance, based upon the grievance-officers personal-opinion, on what should or should not be included in a complaint.(See "DC-ADM 804" attached hereto as Exhibit "A" and incorporated herein as though fully set forth).

7.  On August 2,1999, based upon the information provided by Officer Bolker, and the failure of the grievance-officer to respond to Plaintiffs grievance in a "Timely-Fashion," Plaintiff filed a Grievance against the grievance-officer, with former-superintendent David H. Larkins, alleging, inter-alia, criminal-conspiracy, obstruction of justice, abuse of authority, the deliberate, intentional and malicious deprivation of Plaintiffs right of access, to the quasi-judicial-forum, established by the Department of Corrections for redress of grievance's, the deprivation of Plaintiffs right to receive procedural due process; and, the failure of the grievance-officer to comply with ("DC-ADM 804").

8.  On August 18,1999, based upon the failure of former-superintendent Larkins, to comply with ("DC-ADM 804") and to respond in a  "Timely-Fashion," to Plaintiffs complaint, Plaintiff filed  "Criminal-Complaint's," with the Luzerne - County, District Attorney's Office, alleging, inter-alia, criminal-conspiracy, official-oppression; and, abuse of authority. Apparently, the filing of criminal-complaints by Plaintiff, caused former-superintendent Larkins, to respond to Plaintiffs grievance, as will be more fully explained herein below.

9.  On August 20,1999, Plaintiff received an answer to his grievance, from former-superintendent Larkins, dated August 9,1999, stating that:  "I checked with Mr. Burnett's office and they could find no record of you having submitted this grievance."

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

It can reasonably be inferred, from former-superintendent Larkins response, that it was intended to end the matter and to absolve the Grievance-Officer of any wrong-doing.(See in its entirety, response from former-superintendent-Larkins, dated August 9,1999, attached hereto as Exhibit "C" and incorporated herein as though fully set forth).

10. On August 23,1999, subsequent to former-superintendent Larkins response, and "Contrary" thereto, in an attempt to cover-up his omissions, actions or inactions, Plaintiff received the fabricated, belated, and un-timely purported response from grievance-officer Kenneth Burnett, dated August 9,1999, the same-date, on which former-superintendent Larkins, claimed to have "Checked with Mr.Burnett's office and they could find no-record of you having submitted this grievance." Plaintiff respectfully request the Court to take "Notice" of the apparent Add-On of "DC-15 and File" in the lower left-hand corner of Mr.Burnett's purported response, as well as the difference in the "ink-coloring and the typed-letter's." (See grievance-officers response, attached hereto as Exhibit "B" and incorporated herein as though fully set forth).

11. Plaintiff avers, that the fact's, and exhibit's in support thereof, and presented in this instant document, clearly demonstrate that a "Tacit-Conspiracy" was engaged in by grievance-officer Kenneth Burnett, Officer Hinsel Deitrich, and former-superintendent Larkins, to deny, and in-deed did deprive Plaintiff of his right to petition the Government for redress of his grievance' and, to receive procedural due process and equal-protection of law.

12. Plaintiff avers, that he was denied his Constitutionally Guaranteed Rights under the First, Eighth, and Fourteenth Amendment's, to the United States Constitution.

( CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV. STATEMENT OF CLAIM'S)

13. Plaintiff further avers, that due to the "Tacit-Conspiracy," omissions, actions or inactions, engaged in by Grievance-Coordinator, Kenneth Burnett, Officer Hinsel Deitrich, and former-superintendent Larkins, Plaintiff was forced to continue to suffer from the harmful-effects of the extreme-stagnant-heat and humidity, i.e., heat-exhaustion, dizziness, light-headedness and nausea. Which Plaintiff had complained about in his initial grievance.

## UNLAWFUL ARBITRARY AND CAPRICIOUS RETALIATION:

14. On September 12, 1999, Plaintiff was summoned to the Central-Control area at SCI-Dallas, where he met with a Lt. Cebrick, who informed Plaintiff that he, Lt. Cebrick, had been designated by the security-staff of the Institution, to conduct an investigation into the Criminal-Complaint's, filed by Plaintiff with the Luzerne County, District Attorneys Office, involving certain prison-personnel.

15. The interview commenced at approximately 2: P.M., and lasted approximately 15-20-minute's.(at this time, while being interviewed, Plaintiff was un-aware - of the fact, that defendant Deitrich, was in Plaintiffs cell, without Plaintiff or his cell-partner being present.); it was inappropriate for defendant Deitrich to be in Plaintiffs cell, due to the fact, that defendant Deitrich is/was the subject of an on-going investigation, by the Luzerne County District Attorney's Office, based upon the initiation of a criminal-complaint filed by Plaintiff.

16. At the conclusion of the interview with Lt. Cebrick, Plaintiff returned to his assigned quarters, G-Unit, at approximately 2:20 P.M., at which time Plaintiff, was informed by inmate Jamael Pendagrast, that Officer Deitrich, had entered Plaintiffs cell. This action by Officer Deitrich, had a chilling-effect on Plaintiff, Officer Deitrich could have planted drugs, a knife or any other kind's of contraband, that would have gotten Plaintiff into serious trouble,--

(CONTINUED ON ATTACHED PAGE...)

(CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

—but because he was being observed by several-inmate's, nothing occurred at that time.

17. At approximately 2:30-2:35 P.M., Lt. Cebrick entered G-Unit, and proceeded into the Unit's Control-Office. After conferring with Officer Deitrich, at approximately 3:05 P.M., Lt. Cebrick exited G-Unit. At approximately 3:10 P.M., Officer Deitrich summoned Plaintiff to the Control-Office, and instructed Plaintiff to remove his television from off the top-bunk, Plaintiff replyed, okay. Plaintiff then asked Officer Deitrich, why, all of a sudden, he was telling Plaintiff to take his television down, since its been up there for 2, almost 3-year's, Officer Deitrich responded, "You didn't have a complaint against me then." Plaintiff laughed and walked away. (Plaintiff is not the only inmate-whose television is mounted on the top-bunk. due to forced double-celling, in cell's that are designed for one occupant, there is a lack of space, therefore, the top-bunk, is the only convenient place for the inmate occupying the top-bunk, to place his television).

18. At approximately 7:30-7:35 P.M., Officer Deitrich approached Plaintiffs cell, and told Plaintiff that he was wanted at Central-Control. Once there, Plaintiff was hand-cuffed behind his back, and told to sit on the bench, where he remained for approximately a half an hour to forty-five-minute's. At approximately 8:05 P.M., Plaintiff was escorted into a back-room, where he met with a Captain Pohlidal, who informed Plaintiff, that he had been cited for "Misconduct," by Officer Deitrich, who alleged: "Threatening another person; and, Using abusive or obscene language to an employee." (Whenever an inmate is alleged to have threatened someone, he is immediately placed in the "hole" Solitary-Confinement, until a hearing is held.); Plaintiff explained to Captain Pohlidal that the alleged "Misconduct" was fabricated, false, malicious, and retaliatory.

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV. STATEMENT OF CLAIM'S)

Plaintiff went on to explain to Captain Pohlidal, the basis of the concocted, retaliatory-misconduct. Captain Pohlidal agreed that something did not seem right; e.g., the report did not specify who Plaintiff was supposed to have threatened, or in what way the person was threatened. A Sergeant Perk, stated on Plaintiffs behalf, that he has never heard Plaintiff use abusive-language in his presence. (Which is almost every-day).

19.  Captain Pohlidal, was some-what at a loss as to what to do, considering all of the circumstances, he finally decided to transfer Plaintiff from G-Unit to E-Unit,  "Temporaily, until Lt. Cebrick and Unit-Manager Malloy, could speak with Plaintiff, and sort things out."  Captain Pohlidal stated, that he wanted to avoid Plaintiff and Officer Deitrich, from having any further contact with each other.

20.  On September 13, 1999, while exiting the chow-hall from the noon-meal, Plaintiff approached Lt. Cebrick, who was standing in the main-hall, in response to Lt. Cebrick's question, as to why Plaintiff was transfered to E-Unit, (Which in - all probability he already knew); Plaintiff explained to the Lieutenant everything that had occurred, immediately following the interview with him the day before, on September 12, Lt. Cebrick responded that:  "Since you're having trouble on G-Unit, stay on E-Unit for a few day's, until things cool down."

21.  On September 14, 1999, Plaintiff was summoned to the hearing-examiner's Office, sworn-in, and subjected to a hearing on the concocted-misconduct, preside over by Donald Jones, Officer Deitrich, and his alleged witness, Officer R. Lor were not present at the hearing, they were not under-oath, nor was the misconduct report sworn-to. Plaintiff explained to the hearing-examiner, the basis of the concocted-misconduct, (which had become a matter of common-knowledge around the prison);

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

-that Plaintiff had initiated criminal-complaint's against Officer Deitrich, and other's. Plaintiff further explained that: the alleged misconduct was fabricated, false, malicious and retaliatory in nature. Plaintiff requested a poly-graph-examination, as it was the only means available, by which Plaintiff could prove the truth of the matter. Said request was denied. Plaintiff then requested to be put in touch with the District Attorneys Office, or the State-Police, all request were denied.

22. Subsequently, Plaintiff was found guilty of using abusive language to an employee; the "Threatening another person charge was dismissed". (According to hearing-examiner Jones, regardless of how wrong an Officer is, or might be, he is always right, as far as Iam concerned.); this is common knowledge here at th Institution. Based upon the guilty-verdict, Plaintiff was sentenced to 15-day's cell-restriction, which includes, temporary loss of job/income, loss of privilege's available to the general population, and the submission of false and mis leading information into Plaintiffs record, which will affect Plaintiff in a detrimental and adverse way for a long-time to come. (Prior to being transfered here to Dallas, from SCI-Pittsburgh, Plaintiff had not been cited for misconduct in twenty-one-year's, prior to the concocted-misconduct, Plaintiff receive a misconduct in 1994, all misconduct's were received here at SCI-Dallas.

23. On September 19,1999, Plaintiff filed for additional criminal-complaint's, naming Donald Jones and R. Long, in an on-going conspiracy, in support of Offic Deitrich's act of retaliation against Plaintiff.

24. On October 17,1999, Plaintiff was again summoned to the Central-Control-area of the Institution, where he was met by a Lt.Sutliff, who informed Plainti that he was investigating, on behalf of the Luzerne County District Attorney's Office, Plaintiffs request for additional criminal-complaint's against prison-staff.

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV. STATEMENT OF CLAIM'S)

This purported interview lacked a good faith effort of an objective investi-

gation. Lt. Sutliff's attitude towards Plaintiff was contemptuous, intemidating,

harassing and threatening. Lt. Sutliff informed Plaintiff that, "the end result

of his report of the investigation, could recommend that Plaintiff be put in

the 'hole' solitary-confinement, based upon being a threat to Officer Deitrich,

Officer Long, and Grievance-Officer, Kenneth Burnett; and, to not ever be al-

lowed to ever be in the general-population again. That Plaintiff would be de-

prived of everything, except the bare necessity's of life." Lt. Sutliff went on

to state that; "No-one was going to believe an inmate over staff, and that

Plaintiffs request for a poly-graph-examination meant nothing, that all parties

involved, have already answered the initial-complaint in an acceptable manner."

Lt. Sutliff further stated that, Plaintiff was "Pissing the District Attorney

off, and that the District Attorney dosen't want to have anything to do with

this complaint, nor the State Police, or the Office of Professional Responsi-

bility."

25. On October 29, 1999, Plaintiff learned that his job had been switched and

his pay-rate reduced, from forty(40) to forty-two(42) dollar's a month, to-

thirteen(13) to nineteen(19) dollar's a month, without due process or any justi-

fiable-reason.

26. On October 29, 1999, Plaintiff spoke with Unit-Manager Malloy, in an attempt

to find out who switched his job and reduced his pay; Ms. Malloy responded that,

"She didn't know and didn't want to have anything to do with it." As the Unit-

Manager, it is Ms. Malloy's responsibility to supervise the activitie's on the

Unit's; and, to approve or disapprove the action's or inaction's of the Officer

regarding the inmate's. It is Ms. Malloy's signature on Plaintiffs pay-stub,

approving the reduction of his pay, and change of his job-assignment.

( CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

27. On October 29,1999, Plaintiff submitted an inmate-request form,(DC-135A)
to inmate payroll clerk, Ms.Linda Tomko, explaining what the situation was; and
requesting her to look into the matter of Plaintiffs job change and reduction
of pay. Ms.Tomko responded that: "Ms.Malloy said she would find out an answer
for you, until then, I can't really do anything; I will again bring the matter
up to her." (See copy of inmate accountants response, attached hereto as Exhi-
bit "D" and incorporated herein as though fully set forth).

28. On November 1,1999, Plaintiff spoke with Lt.Cebrick, regarding his job be-
ing switched and his pay being reduced. Lt.Cebrick responded that "It shouldn't
have been done, the payroll clerk made a mistake, I'll contact her to correct
it." On November 10,1999, Plaintiff spoke with Lt.Cebrick again, concerning the
restoration of his pay-rate. Lt.Cebrick responded that: "I forgot, I'll get
right on it." Plaintiff spoke with Lt.Cebrick again on the following date's in
a continuing attempt, to have his pay-rate restored, December 5,1999, and Decem-
ber 13,1999, all attempt's have been futile.

29. It is clear, from the foregoing actions and/or inactions of Unit-Manager-
Malloy and Lt.Cebrick, that Plaintiff has been deliberately, intentionally,
willfully and maliciously lied to, strung-along and given the run-a-round, in
a continuing-scheme of retaliation against Plaintiff, for his filing of an ad-
ministrative-grievance and criminal-complaints, against their fellow-prison-em-
ployee's.

30. On October 15,1999, Plaintiff received a letter from the Luzerne County,
District Attorneys Office, dated: October 13,1999, informing Plaintiff that, a
copy of Plaintiffa complaint's/allegations, were sent to Superintendent Ben-
Varner, therefore, Superintendent Varner was made aware of the illegal-conduct
of his subordinate's, or he should have known, in the proper-exercise of his
official-dutie's. Although Superintendent Varner, has the power and the legal-

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV.STATEMENT OF CLAIM'S)

--dutie's to end the retaliatory-action's, being subtly conducted against
Plaintiff, he has failed to do so.

31.  On October 15,1999, Plaintiff received a letter from the Luzerne County,
District Attorneys Office, dated October 13,1999, informing Plaintiff that, a
"copy of his complaint's/allegation's were sent to the Bureau of Professional-
Responsibility," a branch-office of the ("DOC"); under the authority of Secre-
tary/Director, Martin F. Horn. Therefore, Director Horn, by official-notificatio
was made aware of the illegal-acts of retaliation against Plaintiff, by his em-
ployee's, and/or he should have known, in the proper-exercise of his official-
dutie's. However, Director Horn, by his omissions, actions and/or inactions has
demonstrated an attitude of deliberate-indifference; to the best of Plaintiffs
knowledge and belief, the Secretary/Director, in his supervisory and policy-
making capacity, has taken no-steps to terminate the illegal-retaliatory conduc
of his subordinates, against Plaintiff.

32.  Plaintiff avers, that he has been denied and deprived of his right to pet-
ition the government for redress of his grievance's, which is guaranteed by the
First Amendment to the United States Constitution; and, the Due process Clause o
the Fourteenth Amendment.

33.  Defendant's Burnett, Deitrich and Larkins, hindered and impeded Plaintiffs
right of meaningful access, to the Quasi-Judicial-forum, established by the De-
partment of Corrections ("DOC") for redress of grievance's, which is guaranteed
by the Due Process Clause of the Fourteenth Amendment, to the United States Con-
stitution.

34.  The deprivation of Plaintiffs First and Fourteenth Amendment Right's, cause
him to be subject to the harmful-effects of the extreme-stagnant heat and humi-
dity, i.e., heat-exhaustion, light-headedness, dizziness and nausea, such action
and/or inactions by the herein named defendant's, constitute cruel and unusual--

(CONTINUED ON ATTACHED PAGE...)

(...CONTINUED-FROM-PAGE-2-SECTION-IV. STATEMENT OF CLAIM'S)

-punishment, in violation of the Eighth-Amendment to the United States Constitution; and punishment without Due Process.

35.  Defendant, Lt. Sutliff's threats' to punish Plaintiff for pursuing legal-action, violated Plaintiffs right of meaningful access to the Court's; and, to procedural due process, which is guaranteed by the Fourteenth Amendment to the United States Constitution.

36.  Lt. Cebrick and Unit-Manager Malloy, are the direct-supervisor's of G, and E-Unit's, they are directly-responsible for the actions and/or inactions of the Officer's assigned to each Unit. Therefore, the failure of Lt. Cebrick and Unit-Manager Malloy, to correct the illegal-acts of retaliation against Plaintiff, i.e., the changing of his job and the reduction of his pay-rate, constitute and demonstrate, a continuing-scheme of a tacit-conspiracy, deliberately designed to punish Plaintiff, for his pursuit of legal-action's, in violation of the Equal-Protection-Clause of the Fourteenth Amendment to the United States Constitution.

37.  Plaintiff has no plain, adequate or complete remedy at law, to redress the wrong's described herein. Plaintiff has been and will continue to be irreparably injured, by the illegal-conduct of the defendant's, unless this Court grant the declaratory and injunctive relief which Plaintiff seek's.

/s/ Walter Penn
Walter Penn

## V.  Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.  Wherefore, Plaintiff respectfully pray, that this Court enter judgement, granting Plaintiff a declaratory judgement that the defendants' acts' as described herein, violated Plaintiffs rights' under the United States Constitution: Issue a Preliminary and Permanent Injunction which:

2.  Requires defendant Horn, to remove defendant Burnett from position as "Grievance-Officer," he also functions as the "Spokesperson" for the Institution. This "Dual-Role," presents an issue involving a "Conflict-of Interest," and has a "Chilling-Effect" on Inmates.

3.  Require defendant Horn, to remove defendant Jones from position as "Hearing-Examiner," based upon his personal-interest in maintaining a "Social-Relationship" with Corrections Officers, which does not allow for dispensing "Justice," or for adherence to required principals of--

( CONTINUED ON ATTACHED PAGE...)

Signed this ___12th___ day of ___April___, 19 2000

_____3Kalter Penn_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

___4/12/2000___
(Date)

_____3Kalter Penn_____
(Signature of Plaintiff)

(...CONTINUED-FROM-PAGE-3-SECTION-V.,RELIEF)

-an impartial decision-maker.

4.  Require defendant Horn, to remove from Plaintiffs prison-files, the "Concocted-Misconduct," which was fabricated by defendant Deitrich, an act of intentional, willful, and malicious retaliation against Plaintiff. Said "Retaliatory-Misconduct," was developed within minutes, subsequent to Plaintiffs interview, regarding a criminal-complaint having been filed against Officer Deitrich, by Plaintiff.

5.  Prohibit the defendants' their agents' employee's, successors in interest and all other persons in active concert or participation with them, from harassing, threatening, punishing, or retaliating in anyway against Plaintiff, because he has filed this action.

6.  Award Plaintiff Compensatory damages in the amount of $500.00 from all defendants' and each of them;

7.  Award Plaintiff Punitive damages in the amount of $2500.00 from all defendants' and each of them;

8.  Reasonable Attorney's fees and cost;

9.  Such other and further relief as this Court may deem just, proper and equitable.

   A jury trial is hereby demanded.

                                        /s/ _Walter Penn_
                                            Walter Penn

| **DC-ADM 804 Administrative Directive** | **COMMONWEALTH OF PENNSYLVANIA** |
|---|---|
| Subject:<br>**CONSOLIDATED INMATE<br>GRIEVANCE REVIEW SYSTEM** | **DEPARTMENT OF CORRECTIONS**<br> |

## I.   PURPOSE

The Consolidated Inmate Grievance Review System is adopted to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought.

## II.   SCOPE

This directive applies to all state correctional institutions, state regional correctional facilities, and community service centers. Inmates shall have the opportunity to have their grievances addressed at three levels.

A.  Initial Review, which shall include fact finding and may include a preliminary review of the fact finder's decision;

B.  Appeal from Initial Review, which shall provide review of the Initial Review decision at the Su-Superintendent or Regional Director's level; and,

C.  Final Appeal to Central Office for issues involving allegations of continued non-compliance with the law or Bureau policy.

## III.   APPLICABILITY

A.  Informal Resolution of Problems

All inmates are encouraged to work out any problems or differences with staff informally or by submitting a written request directly to the staff member involved. If an emergency situation arises, the inmate should notify the most accessible staff person immediately. When an inmate feels that an issue needs a more formal and structured review, this system may be used. No inmate shall be penalized, retaliated against, or disciplined because of a good faith use of this system.

B.  Coordination with other Appeal Procedures

1.  This directive establishes procedures for the review of inmate grievances not already covered by other Bureau of Correction Administrative Directives and policies. It also serves as a tool to integrate review procedures established by other directives with the procedures in this directive.

2.  For every issue there shall be a forum for review and an avenue of appeal, but only one. For example, issues relating to an inmate disciplinary proceeding shall be addressed at the Initial Review level by the Hearing Committee and Program Review Committee. They may be appealed to the Superintendent. Issues involving non-compliance with law or Bureau policy may also be appealed to Central Office for final review. These issues will not be considered by the Inmate Grievance Coordinator.

3.  This directive revises the Inmate Complaint System but does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any

DC-ADM 804

other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues. Examples are the Publications Review Committee and Misconduct Hearing Committee.

## IV. COMPLETION OF REVIEW AFTER TRANSFER OR RELEASE

Any inmate who is released or transferred after the filing of a grievance or appeal, but prior to the completion of the appeals, may continue to pursue the grievance or appeal by notifying the Superintendent or Regional Director of the institution in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## V. FORM - GRIEVANCES AND APPEALS

A. All grievances and appeals shall be in writing and in the format provided by the forms supplied by the institution.

B. All grievances and appeals shall be presented individually. Group grievances and appeals are prohibited.

C. Only an inmate who has been personally affected by a Bureau or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

D. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Bureau directives, regulations, the ICU consent decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review.

E. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Coordinator may combine multiple grievances which relate to the same subject.

F. All appeals or grievances may be sealed by the inmate. The intended recipient must be identified on the outside of the package. The appeal or grievance should be delivered to the designated place by the inmate grievant.

## VI. INMATE GRIEVANCE COORDINATOR

The Inmate Grievance Coordinator shall be appointed by and report to the Superintendent or in the Community Services Centers, the Regional Director.

## VII. INITIAL REVIEW

A. Initial review procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court. All reviews below the Superintendent or Regional Director level are considered to be initial reviews.

B. Any inmate grievance may be addressed to the Inmate Grievance Coordinator except issues related to the following:

Exhibit A

DC-ADM 804

## VIII.  APPEAL FROM INITIAL REVIEW

A.  An inmate who is dissatisfied with the Initial Review decisions pursuant to the directives and policies specified in §VII.B. of this directive may also appeal to the Superintendent or Regional Director within 5 working days of receiving the decision, as provided below. The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.

B.  With regard to all other grievances, an inmate or other affected person who is dissatisfied with an initial review decision may appeal to the Superintendent within 5 calendar days after receipt of that decision. An appeal concerning a problem arising at a community service center must be directed to the Regional Director of the region in which the community service center is located within 5 working days after receipt.

C.  All appeals must conform to the requirements specified in §V. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted. Therefore, all issues must be included.

D.  Within 10 working days after the receipt of an appeal, the Superintendent or Regional Director shall notify the inmate and other interested persons of his/her decision. All issues raised by the person appealing the initial review decision will be addressed and any other matter relevant to the issues raised may be considered. The Superintendent or Regional Director is not required to address any issue not raised by the appellant. He/She may approve, disapprove, modify, reverse, remand or reassign for further fact-finding. He/She will include a brief statement of the reasons for his/her decision.

E.  If no appeals are received in accord with §IX, the Appeal from Initial Review Decision shall be final.

## X.  FINAL REVIEW

A.  After the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review, he/she may seek final review of any issue involving continued non-compliance with the ICU Consent Decree, other law, or Bureau directive or policy.

B.  Any inmate or other affected person who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within 7 calendar days of receiving the decision, appeal any issue relating to non-compliance with the ICU Consent Decree, other law, Bureau directive or policy for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

C.  Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

D.  Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801 will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee (CORC) for further reviews. Final Review of all other appeals will be directly to the CORC. CORC shall consist of the Commissioner, Deputy Commissioner, Chief Counsel, or their designees.

E.  All requests for Final Review shall conform to the form specified in §V and VIII.C of this directive.

F.  The CORC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter. The Chief Counsel will advise in regard to any question of law relevant to the issues raised by the grievant.

Exhibit A

DC-804
PART II

COMMONWEALTH OF PENNSYLVANIA
**DEPARTMENT OF CORRECTIONS**
P. O. BOX 598
CAMP HILL, PA. 17011

**OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE**

GRIEVANCE NO.    DAL-0624-99

| TO: (Name & DC NO.)<br>AP9156 WALTER PENN | INSTITUTION<br>SCID | QUARTERS<br>G | GRIEVANCE DATE<br>07/27/1999 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

According to Lt. Cebrick, Area Commander, on July 16, 1999, two (2) fans were brought onto G-Block. The fans were positioned in front of the block office. At that time, the fans' cord was plugged in with an extension cord that could only run through the block office doorway, across the block office floor, and to the outlet by the office window. This was only a temporary situation because the cord only reached to the front of the office. This situation created a hazardous condition because staff and inmates would trip.

In order to solve this situation, both day shift and afternoon shift security officers submitted their input with respect to finding a solution. The fan was moved to a less obstructive, yet still beneficial, area of the block. This position benefited the majority of the block. According to Lt. Cebrick, this occurred on July 22, 1999. In my view, your problem was not a major concern because you were the only inmate to complain on G-Block.

Your patience and cooperation is appreciated.

KB:gc
cc: Lt. Cebrick
    Ms. Malloy
    DC-15
    File

Exhibit-B

| Refer to DC-ADM 804, Section VIII,<br>for instructions on grievance<br>system appeal procedures | SIGNATURE OF GRIEVANCE COORDINATOR | DATE<br>8/9/99 |
|---|---|---|

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Dallas**
(570) 675-1101
August 9, 1999

**SUBJECT:**     Response to Official Inmate Grievance
Grievance # (no number provided)

**TO:**     Walter Penn, AP-9156
G-Block

**FROM:**     David H. Larkins
Superintendent

I received your communication, which was given to me on a Grievance Form, DC-804 regarding your allegation that Mr. Burnett did not process a grievance.

I checked with Mr. Burnett's Office and they could find no record of you having submitted this grievance. I am referring this backing to you with instructions that you are to follow the Grievance Procedure and to submit a Grievance to the Grievance Coordinator as specified in DC-ADM 804.

DHL:rll

cc:   Mr. Burnett
DC-15
File

Exhibit-C

**DC-135A**

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) Ms. Linda Tomko, Inmate-Payroll Clerk | | 2. DATE 10/29/99 |
|---|---|---|
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) Walter Penn, AP-9156 | | 4. COUNSELOR'S NAME Mr. Swanger |
| 5. WORK ASSIGNMENT E-Block | 6. QUARTERS ASSIGNMENT E-Block | |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Ms. Tomko,  There appears to be a misunderstanding in regards to my pay. Subsequent to Officers Mattice, discussion with you this morning in regards to my pay, I was advised to send you a request, explaining my situation. Through no initiative of my own, on September 12, 1999, by order of Capt. Pohlidal, I was transfered from G-Unit-to E-Unit, as Capt. Pohlidal felt the need to deter further contact, between myself and a particular officer. According to Capt. Pohlidal, the move was tempor-ary, pending my being interviewed by Unit-Manager Malloy and Lt. Cebrick. Subsequen to speaking with Lt. Cebrick, he decided that I should remain on E-Unit for a while until things calmed down. This transfer was not based upon disciplinary-action, and should not affect my job situation or pay. Officer Mattice, informed me that you explained to him, that because I was transfered to E-Unit, I lost my job, therefore a reduction of pay was required, from 23-cent's an hour, to 19-cent's an hour.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)                                      (CONTINUED...)

Mr. Penn, Ms. Malloy said she would find out an answer for you. Until then, I can't really do anything. I will again bring the matter up to her.

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                                              DATE