JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PENN,<br>　　　Plaintiff | : | CIVIL ACTION |
| v. | : | NO. 1:CV-00-0771 |
| BEN E. VARNER, et al.<br>　　　Defendants' | : | (JUDGE RAMBO) |

FILED
HARRISBURG, PA

AUG 2 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Walter Penn("Plaintiff"), initiated this pro se complaint in this matter on April 20,2000. Plaintiff, a prisoner currently and at all times relevant to this complaint, incarcerated at the State Correctional Institution at Dallas, Pennsylvania("SCI-Dallas"). The Defendants' at the time the complaint was filed, were/are employees of the Department of Corrections("DOC"). Named as defendants' are the following employees' at SCI-Dallas:  Ben E. Varner, Superintendent of the institution; David H. Larkins former superintendent of the institution; Kenneth Burnett, grievance coordinator Hensyl Dietterick, Robert Long, David GeBrick, and Ned Sutliff, corrections' officers; Bonita Malloy, unit-manager; Donald Jones, hearing-examiner; and, Martin F. Horn, secretary/director of the Pennsylvania Department of Corrections. All defendants' are sued in their official and personal capacity. Plaintiffs complaint was received by the Court on April 28,2000. The defendants' waived formal service of the complaint on May 26,2000. On July 3,2000, The defendants' filed a "Motion to Dismiss" the complaint, pursuant to F.R.C.P. 12(b)(6), and a brief in support of defendants' motion was submitted.

II.   QUESTION'S PRESENTED

A.   WHEN THE GRIEVANCE SYSTEM ESTABLISHED
BY THE DEPARTMENT OF CORRECTIONS("DOC")
IS HINDERED IMPEDED AND OBSTRUCTED DUE
TO THE IMPERMISSIBLE CONDUCT OF PRISON
OFFICIALS CONSTITUTING A BREAKDOWN IN
THE ADMINISTRATIVE PROCESS SHOULD THE
EXHAUSTION REQUIREMENT BE EXCUSED?

B.   IS DEFENDANT HORN IN HIS OFFICIAL CAPACITY
RESPONSIBLE FOR THE BREAKDOWN OF HIS DESIG-
NATED CHAIN OF COMMAND DUE TO THE ACTIONS/
INACTIONS OF HIS SUBORDINATES?

C.   IS DEFENDANT HORN IN HIS OFFICIAL CAPACITY
RESPONSIBLE FOR PROVIDING THE INMATES IN
HIS CARE A SECURE, MEANINGFUL AND EFFECTIVE
FORUM TO SEEK REDRESS OF GRIEVANCES?

III.   FACTS

Prior to filing this action on April 20, 2000, Plaintiff had initiated
an official administrative inmate grievance, Complaint 3. Defendant Burnett,
failed to properly process Plaintiffs grievance in accord with department of
corrections guidelines, policy and administrative directive-804, Complaint 2-3.
See, DC-ADM 804 attached as Exhibit "A" to the Complaint. Due to the failure
of defendant Burnett to respond to Plaintiffs grievance and to respond in a
"Timely-Fashion," on August 2, 1999, Plaintiff filed a grievance against de-
fendant Burnett, with former superintendent, defendant Larkins, alleging,
inter alia, criminal conspiracy, obstruction of justice and the deprivation
of Plaintiffs right to access the grievance system. Complaint 7.

---

[1]Grievance applications are filed in quadruple-forms and
identified as follows: White----grievance coordinators copy;
Canary----file copy; Pink----action return copy; and,
Goldenrod----inmate copy. Plaintiff never received his copy
of the grievance, a pre-requisite when appealing a possible
adverse ruling.

On August 18,1999, well beyond the time-period allowed within which to re-
spond to an inmates grievance, Plaintiff filed criminal complaints with
the Luzerne County District Attorneys offic, alleging, inter alia, criminal-
conspiracy; official oppression; and abuse of authority, Complaint 8. On -
August 20,1999, Plaintiff received the belated untimely response from de-
fendant Larkins, stating that "I checked with Mr. Burnett's office and they
could find no-record of you having submitted this grievance." Complaint 9.
See, defendant Larkins response attached as Exhibit "C" to the Complaint.
Immediately following defendant Larkins response, on August 23,1999, Plain-
tiff received the belated and untimely response of defendant Burnett, the
response is dated August 9,1999, the "Same-Date," defendant Larkins checked
with defendant Burnett's office, and was told that there was no-record of
Plaintiff having filed a grievance. Then how is it possible for defendant
Burnett to answer a grievance that dosen't exist, according to defendant Lar-
kins, Complaint 10. See, defendant Burnett's response attached as Exhibit "B"
to the complaint. Also See, copy of Plaintiffs letter to Luzerne County Dis-
trict Attorneys office, explaining: 1) When Plaintiff received Exhibit's "B"
and "C" attached to the complaint; and 2) The difficultie's Plaintiff was
encountering in his attempts to have his grievance's processed. Attached here-
with and incorporated herein as though fully set forth are Exhibit's "B-E 1.
The defendants' allege, that Plaintiff did not wait for defendant Burnett, to
answer his complaint within the 10-working-day's time-period allowed, defen-
dents' "motion to dismiss" at 5. The defendants' further state, that beside--

---

[2] Defendant Larkins was subsequently fired due to his
inability and failure to exercise proper control over
SCI-Dallas or the employee's.

-defendant Burnett's signature on his response is August 9,1999, n.3. However, even if this implication were true, from July 25,1999, to August 9,1999, would still be beyond the 10-working-day's time-period; and Plaintiff would still have been precluded from filing a "timely appeal" which consist of rapid-fire-deadlines, as alleged in Plaintiffs complaint at 5, 10. Furthermore, the defendants' conveniently ignor the fact that, "defendant Larkins checked with Burnett's office and was informed that there was no-record of a grievance submitted by Plaintiff." See, Larkins response attached to the complaint as Exhibit "C." Moreover, the defendants' does not even attempt to explain how defendant Dietterick, came to be in possession of Plaintiffs grievance application on July 30,1999, as alleged by Plaintiff in his complaint at 4. The defendants' attempt to mis-lead this Honorable Court, by stating at 2-4, of their "motion to dismiss," that Plaintiff"did not exhaust his administrative remedies through the prisons review process, concerning both his grievance's and the mis-conduct." Apparently, defendants' miss the point of this instant action; Plaintiff alleges in his complaint, that due to a "Tacit-Conspiracy," engaged in by defendants' Burnett, Dietterick and Larkins, Plaintiff was effectively denied and deprived of his right to petition the government for redress of his grievance's; and, to receive procedural due process and equal protection of law, complaint-1¶,2,1. Also See, copy of Plaintiffs letter to chief detective Michael Dessoye, of the Luzerne County District Attorneys office, wherein Plaintiff explains what he was told by defendant Sutliff, that "Plaintiffs complaint was going no-further than the institution." See, Exhibit's-F-F1 attached hereto and incorporated herein as though fully set forth. Moreover, Plaintiff did grieve the mis-conduct engaged in by all of the defendants' named in the complaint, contrary to the defendants' bald-assertions in their "motion-to dismiss" at 7, which is demonstrated by defendant Larkins response attached-

--hereto as Exhibit "G" and incorporated herein as though fully set forth.
Again, contrary to the baldassertions of the defendants' Plaintiff did appeal his disciplinary hearing, which was based upon a fabricated and false mis-conduct report, the "Program Review Committee," ("PRC"), did not address the merit's of Plaintiffs appeal, totally disregarding them and sustaining the process used to find Plaintiff guilty; nor did Plaintiff receive a copy of his appeal back from the ("PRC"), which is necessary to filing further appeals; Plaintiff was denied due process in this forum, by the failure of the ("PRC") to consider the substantial-merits alleged in the appeal. See, copy of decision rendered by ("PRC") on Plaintiffs appeal attached herewith as Exhibit "K" and incorporated herein as though fully set forth.  Subsequent to the dismissal of defendant Larkins, from the position as superintendant of SCI-Dallas; defendant-Ben Varner, was appointed to replace him. On September 12, 1999, Plaintiff continued his effort's to receive due process on his appeal, i.e., grievance's, by filing a grievance with defendant Varner, in regards to the impermissible-conduct of  "Retaliation"  against Plaintiff for his pursuit of a protected and unstricted right to petition the government for redress of grievance's; said grievance was returned to Plaintiff on 4-separate occassion's, absent a clear reason for the rejection, by someone named Ms. Robin, who failed to process the grievance in accord with "DC-ADM 804" as she was required to do. See, copy of the grievance that was submitted to superintendant Varner, attached herewith as Exhibit's "H-1,H-2,H-3,H-4, and incorporated herein as though fully set - forth. Prior to the fourth (4th) submission of the grievance, Plaintiff attached a request-form("DC-135A") to the grievance, explaining what the circumstances were, and requesting Ms. Robin, to process the grievance as it is. Ms.- Robin's response on the returned request-form was that "the Luzerne County D/A's

office. Has addressed the issue." See, copy of request-form(DC-135A) attached herewith as Exhibit "I" and incorporated herein as though fully set forth. Plaintiff then wrote to the Luzerne County District Attorneys office, explaining what the situation was, that Plaintiffs grievance was returned to him because, according to Ms. Robin, "This issue has been addressed via Luzerne Co. D/A's office." See, copy of letter to Luzerne County District Attorneys office attached herewith as Exhibit's "J-1-J-2" and incorporated herein as though fully set forth.   The Pennsylvania Department of Corrections does provide a consolidated inmate grievance and review system "defendants' motion to dismiss" at 6. However, the Department of Corrections does not provide a clear, meaningful, effective or adequate "Alternative" to that system, when there is a demonstrated "breakdown" in the first-instance when the procedural process is hindered, impeded, thwarted and obstructed, due to the willful, intentional, deliberate and malicious impermissible conduct of prison officials, as pleaded in Plaintiffs complaint at 4-13, and supported by attached Exhibit's "B" and "C" to the complaint. Moreover, the "Prison Litigation Reform Act, § 1997e(a), does not provide a clear, meaningful, effective or adequate "Alternative" to a demonstrated "breakdown," in the administrative grievance and review system, due to the willful, intentional, neglectful, and deliberate mis-conduct of those prison officials' that are assigned and responsible to regulate the process.

Record in this instant matter fully supports the fact, that Plaintiff has attempted to prosecute his grievance's against prison officials to the best of his ability, but as alleged in the complaint from 2-13, Plaintiff was never allowed access into the system and was in fact shut-out. Not only did Plaintiff diligently seek to have his grievance's processed through the Pennsylvania Department of Corrections Consolidated system's, Plaintiff went further, due to—

-the lack of a viable alternative, Plaintiff sought extraordinary-relief i.e.,
the filing of criminal complaints with the Luzerne County District Attorneys
office, complaint 8, 23, based upon, inter alia, criminal conspiracy; abuse of
authority; and, official oppression. It is not Plaintiffs fault that prison
officials chose to <u>not</u> accept and file Plaintiffs application's and allow
said grievance's to proceed through the appeal-process. Plaintiff has <u>no-con-
trol</u> over the actions/inactions of prison officials, and the only viable or
legal recourse available to Plaintiff, is the initiation of this instant action

---

[23] The defendants' contend that Plaintiff failed to produce
any documents that show he grieved the allegations contained
in the complaint regarding the conduct of the officers, the
change in his job and loss of pay; defendants' motion to dis-
miss at 4. To the <u>contrary</u>, Plaintiff did grieve the retaliatory
action of his job change and reduction of his pay. <u>See</u> Request-
form(135A) attached to the Complaint as Exhibit "D" all other
documents pertinent to this instant action, can be obtained <u>via</u>
discovery and/or interrogatories.

## IV.    ARGUMENT

### A.    STANDARD of REVIEW for FEDERAL RULE of CIVIL PROCEDURE 12(b)(6).

It is well settled that in considering Defendants' motion to dismiss under Rule 12(b)(6), the Court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the pleadings, the Plaintiff may be entitled to relief." Colburn v. Upper Darby Twp., 838 F.2d 663(3d Cir. 1988), cert. denied, 489 U.S. 1065(1989). In fact, under the 12(b)(6) standard in this jurisdiction, the Court must determine whether "relief could be granted on any set of facts which could be proved." Ransom v. Marrazzo, 848 F2d 398(3rd Cir. 1988). The Court may grant a motion to dismiss only "if there is no doubt" that Plaintiff can support "no facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41-(1957) (emphasis added).

As an initial matter, "(p)rison walls do not form a barrier separating prison inmates from the protections of the Constitution...." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). Plaintiff has alleged facts sufficient to state a claim that his constitutional right to access to the Courts has been violated, and that he has suffered injury as a result. Moreover, Plaintiff has alleged facts sufficient to establish that prison officials, who exercise daily control over all levels of his environment, retaliated against him for exercising his constitutional right to access to the Courts. Accordingly, Plaintiffs Complaint in all respects survives Defendants' motion to dismiss under Rule 12(b)(6).

B.   **Plaintiff's Claims Under 42 U.S.C. § 1983 Survive As A Matter Of Law.**

      With the Rule 12(b)(6) standard in mind, it is clear that--assuming all the allegations in the Complaint are true, as Defendants' must for the purposes of their motion--Plaintiff can state a claim for denial of access to the Courts as well as retaliation for exercising his rights to access to the Courts in violation of 42 U.S.C. § 1983.

    1.   **Plaintiff's Claim Under 42 U.S.C. § 1983 Based On The Infringement On His Constitutional Right To Access To The Courts Survives Defendants' Rule 12(b)(6) Motion.**

      To state a claim under 42 U.S.C. §1983 against prison officials, Plaintiff need only show that the conduct of which he complains was committed by a person acting under the color of state law and that this conduct deprived Plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983;

      It is well settled that prison inmates have a constitutional right to meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 821-822 (1977). The constitutional right of access to the courts stems from the First Amendment right to petition the Government for the redress of grievances, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Privileges and Immunities Clause of Article IV, section 22. See Turiano v. Schnarrs, 904 F. Supp. 400, 408 (M.D. Pa. 1995)(citing Hudson v. Palmer, 468 U.S. 517, 523 (1984).

In Ex Parte Hull, 312 U.S. 546 (1941), the Supreme Court held that "the State and its officers may not abridge or impair petitioners right to apply to a federal court." id. at 549. Furthermore, whether or not a petition has merit and is properly drawn are matters for the courts--not state officials --to determine. id. In Bounds v. Smith, 430 U.S. 817 (1977), the Court significantly expanded the right of access to the courts recognized in Hull. Instead of merely refraining from obstructing prisoner access to the courts, the - Bounds majority concluded that the States "shoulders affirmative obligations to assure all prisoners meaningful access to the courts." id. at 824. The Supreme Court held that prison officials must "assist inmates in the preparation and filing of meaningful legal papers." id. at 828. In Treff v. Galetka, 74 F.3d 191 (10th Cir. 1996), the Court stated at 195: "A refusal to process any mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights." In O'Keef v. Murphy, 860 F.Supp. 748 (E.D. Wash. 1994), the Court held: "A prisoners correspondence sent to government agencies or officials as a grievance, is protected by his First Amendment right to petition the government for redress of grievances."

Plaintiff has sufficiently alleged that his non-frivolous legal claims against Defendants' have been frustrated, hindered and impeded by the unlawful conduct of the defendants' throughout the litigation of this case, by their use of various tactics. Specifically, failing to file Plaintiffs grievance, failing to respond in a timely-fashion to the grievance, failing to return to Plaintiff his copy of the grievance, denying that Plaintiff filed a grievance, and by throwing away Plaintiffs grievance; all done for the sole purpose of denying to Plaintiff his Constitutionally guaranteed rights to effective and meaningful access to the Courts.

2.   **DEFENDANTS RETALIATED AGAINST PLAINTIFF IN VIOLATION OF SECTION 1983 FOR EXERCISING HIS RIGHT TO ACCESS TO THE COURTS**

It is also well established that retaliation prompted by the exercise of a constitutionally protected right is in itself a violation of an inmates constitutional rights. Courts have consistently held that prisoners are afforded the constitutionally protected right to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821-22 (1977). Harassment of inmates in pursuit of their litigation "rebounds ultimately to the detriment of the inmate population as a whole." Prisoners' Legal Assoc., 822 F.Supp. at 191. In Holloway v. Hornsby, 23 F.3d 944 (5th Cir. 1994), the Court stated that "it is very important to our treasured system of justice that our courts be open to anyone with a case or controversy presenting a justiciable claim. Ready access to our court system, including access by those who are incarcerated, is recognized as a valuable constitutional right, one to be carefully guarded. Complaints about the validity of incarceration or the treatment accorded inmates are entitled to timely and meaningful consideration." at 946.

Officials at SCI-Dallas retaliated against Plaintiff, when on September 12, 1999, subsequent to an interview conducted by defendant CeBrick, concerning criminal complaints filed against defendants' Burnett, Deitterick and Larkins, the following events occurred: on september 12, 1999, defendant Deitterick searched Plaintiffs cell, leaving it in disarray, on september 12, 1999, defendant Deitterick filed a fabricated and false mis-conduct report against Plaintiff, in support of defendant Deitterick, defendant Long, claimed to have witnessed the alleged mis-conduct, on september 12, 1999, defendant Deitterick caused Plaintiff to be transfered to another unit, on september 13, 1999,

--defendant CeBrick denied Plaintiffs request to be put in touch with the
state police or the District Attorneys office, on september 14,1999, defendant
Jones denied Plaintiffs request for a polygraph examination and Plaintiffs re-
quest to be put in touch with the state police or the District Attorneys office,
Plaintiff was then found guilty of the fabricated and false mis-conduct charge
and sentenced to 15-day's cell-restriction, on October 4,1999, Plaintiff was
cited with another alleged mis-conduct report, for being asleep during count,
when there exist no-rule stating that sleeping at count requires a mis-conduct,
Plaintiff was sentenced to an additional 15-day's cell-restriction and loss of
privilege's, prior to being transfered from SCI-Pittsburgh to SCI-Dallas, Plain-
tiff had not been cited for mis-conduct in over 20-year's, on or about october-
7,1999, defendants' CeBrick and Malloy changed Plaintiffs job and decreased
his pay, on October 17,1999, during an interview conducted by defendant Sutliff,
concerning Plaintiffs request for additional criminal complaints, to include
defendants' Jones and Long, defendant Sutliff began the interview by intimida-
tion, harassment and finally threatened to put Plaintiff in the "hole" if
Plaintiff continued his pursuit of criminal complaints and/or civil action.
All of the foregoing event's occurred in the absense of Plaintiff being afforded
any type of due process.

Plaintiffs pursuit in legal activities must be constitutionally pro-
tected and these activities must be a substantial or motivating factor in cau-
sing the retaliatory acts. See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S.-
274, 287 (1977).

A Plaintiff that alleges retaliation for his pursuit of legal court
action, must only show that the motivating factor behind prison officials' act-
ions was retaliation for current or prior litigation. See id. See also Flaherty-

--v. Coughlin, 713 F.2d 10, 13 (2nd Cir. 1983)(inmate may not be retaliated against for bringing a civil rights claim). The Courts have consistently held that an act taken in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983 even when the act, when taken for a different reason, would have been proper. Mt.Healthy, 429 U.S. at 287; Buise v. Hudkins, 584 F2d 223, 229(1978), cert. denied, 440 U.S. 916(1979).

It is true that an inmate may use circumstantial evidence to prove that prison officials retaliated against him. See Smith v. Maschner, 899 F2d 940, 949(10th Cir. 1990). Circumstantial evidence such as the chronology of events, suspicious timing of disciplinary actions, coincidental transfers and an alleged pattern by prison officials that causes deterioration of Plaintiffs situation or condition. See id. In Flaherty v. Coughlin, the Court found that an inmate's allegations of retaliatory motive were supported by circumstantial evidence such as the inmate's overall improved record, the minor nature of his most recent disciplinary violations are considered by the Court. 713 F.2d 13, 14 (2nd Cir. 1983). An inmate's right to access to the courts without fear of retaliation was a clearly established right at the time of the defendants' conduct. See - Scher v. Engelke, 943 F2d 921 (8th Cir. 1991), the Court held that "the law-making retaliation for the exercise of a constitutional right actionable has been established for some time and an objectively reasonable official could not fail to know of it." In Martin v. Lane, 766 F.Supp. 641 (N.D.III. 1991), the Court held, "A claim that the Plaintiff was transfered in retaliation for his grievance, supported by a disputed chronology from which retaliation could be inferred, raised a genuine issue of material fact." In Harris v. Maloughney, - 827 F.Supp. 1488 (D.Mont. 1993), the Court held that "the constitution protects individuals from arbitrary governmental action, and from discipline which is in-

--the form of punishment or retaliation."

V.    The Complaint Should Not Be Dismissed As To Defendant
      Horn Because He Was Notified And Made Aware Of The
      Impermissable Conduct Of His Subordinates.

Contrary to defendants' assertion in their motion to dismiss defendant Horn at 8. Plaintiff avers, that the internal operating procedures ("IOP"), of the Pennsylvania Bureau of Corrections ("PBOC"), requires the Superintendents of each prison located in the state of pennsylvania, to file daily-reports to the secretary/director, defendant Horn, of the Pa. prison-system, of events that occure each-day, especially those incidents that are outside the normal everyday routine of prison management, such as the filing of criminal complaints against prison personnel. As alleged in Plaintiffs complaint at 3, defendant Horn was made aware of the illegal activities en-gaged in by his subordinates, by letter along with a copy of Plaintiffs al-legations sent to the Bureau of Professional Responsibility, from Chief County Detective Michael Dessoye, of the Luzerne County District Attorneys office, the address to the Office of Professional Responsibility and the secretary/ director, defendant Horn, are exactly the same, See copy of letter from detec-tive Dessoye attached herewith as Exhibit "L" and incorporated herein as though fully set forth. In Hall v. Lombardi, 996 F.2d 954 (8th Cir. 1993), the Court stated "...(P)roof of actual knowledge is not an absolute prerequisite for imposing supervisory liability...We have 'consistently held that reckless disregard' on the part of a supervisor will suffice to impose liability." (Citations omitted). The Court further stated that "Prison regulations required the reporting to the warden of the names of all inmates assigned to the special-management facility, the reason for the assignment, and the length of time--

-assigned; the warden was required personally to review assignments and re-tentions of more than one year and report them to the commissioner, thus, their compliance or noncompliance with these regulations may establish actual know-ledge or reckless disregard." See Lowrance v. Coughlin, 862 F.Supp. 1090(S.D.N.Y) 1994), the Court found commissioner and various superintendents liable because they had notice that some transfers were retaliatory. Also See Klinger v. Nebras-ka, Dept. of Correctional Services, 824 F.Supp. 1374(D.Neb. 1993), the "directors of the prison system are liable in damages for violations because they knew of the inequities, displayed deliberate indifference or tacit authorization of them, and failed to take suffient remedial measures." Also See Williams v. -Griffin, 952 F.2d 820(4th Cir. 1991), evidence that prison officials had been placed on notice of unlawful conditions supported a finding of deliberate in-difference. at 826: "...(O)nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take cor-rective action when warranted." All of Plaintiffs claims under 42 U.S.C. § 19-83, and 42 U.S.C. § 1985(3), survives as a matter of law.

CONCLUSION

     For the foregoing reasons, Plaintiff respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety Plaintiff Walter Penn's Complaint.

Respectfully Submitted,

Walter Penn, Plaintiff
#AP-9156
1000 Follies Road
Dallas, PA 18612-0286

Dated: 7/29/2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PENN, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 1: CV-00-0771 |
| BEN E. VARNER, et al., | : | |
| Defendants' | : | (JUDGE RAMBO) |

## VERIFIED STATEMENT

I, Walter Penn, pro se Plaintiff in this instant action, declare under penalty of perjury, pursuant to Title 18 Pa. C.S. § 4904, relating to (Unsworn Falsification To Authorities), that the facts stated in Plaintiffs BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, are true and correct, to the best of Plaintiffs information, knowledge and belief.

Respectfully Submitted,

Walter Penn, Plaintiff
#AP-9156
1000 Follies Road
Dallas, PA. 18612-0286

Dated: 7/29/2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PENN, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 1: CV-00-0771 |
| BEN E. VARNER, et al., | : | |
| Defendants' | : | (JUDGE RAMBO) |

## CERTIFICATE OF SERVICE

I, Walter Penn, Plaintiff pro se., hereby certify that on this date I caused to be served the foregoing, BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE COMPLAINT, by depositing a copy of the same in the United States mail, postage prepaid, in State Correctional Institution at Dallas, PA., addressed to the following:

Maryanne M. Lewis,
Deputy Attorney General

Office Of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120

Dated: 7/29/2000

Respectfully Submitted,

Walter Penn, Plaintiff

WALTER PENN, AP-9156
SCI-DALLAS, DRAWER K,
DALLAS, PA  18612-0286

MR. RICHARD GRABOSKY, ESQ.
DISTRICT ATTORNEYS OFFICE
COURT OF COMMON PLEAS
200 N. RIVERS STREET
WILKES-BARRE, PA  18711

                    In re:  <u>Criminal-Complaint</u>

Dear Mr. Grabosky:

        I have just recently come into possession of two-item's of evidence,
that would support my claim's in the above captioned matter, which was filed
with your office on August 18, 1999.

        Attached to my Affidavit requesting the issuance of a  CRIMINAL-COM-
PLAINT,   there is an Exhibit marked A, which is from the Superintendent, stating,
"I checked with Mr. Burnett's office and they could find no record of you having
submitted this grievance." NOTE: this response is dated AUGUST 9, 1999.

        Enclosed herewith, please find Exhibit-B, dated AUGUST 9, 1999, the
purported response of Mr. Burnett, to the grievance, the Superintendent claimed
"there is NO record of."

        Also Enclosed herewith, is Exhibit-C, which is the response to the grie-
vance I filed in connection with the charge(s) I've enumerated in my affidavit
requesting issuance of Criminal-Complaint(s).  Exhibit-C, is dated August 12,
1999, I did not receive Exhibit's B, and C, in the routine manner of mail-de-
livery, but found them on the floor of my Cell, upon returning from the even-
ing-meal on or about August 20, 1999 and August 22, 1999.

        It is apparent, that the Official's here at SCI-Dallas, have deliberatey
wilfully, and maliciously, neglected and totally-abandoned, the Department of
Corrections ("DOC") policy, guidelines, and procedures, that GOVERN the pro-
cessing of an Inmates legally-filed-grievance, which constitutes violation's
of both State and Federal Law's.  Therefore, there exist NO corrective pro-
cess at SCI-Dallas, whereby an Inmate with ligitimate, meritorious complaints,
could have his grievance's properly, fairly and adequately adjudicated, in ac-
cord with law and Justice, as there presently exist, circumstances that reads
renders such process ineffective, to protect the rights of the grievant.

                                            (CONTINUED...)

Exhibit-E

(...CONTINUED)

WHEREFORE, in the interest of furthering the cause of justice, complainant respectfully re-iterates his request for issuance of "ARREST WARRANT'S," forthwith, so that the defendant's may answer to the charge(s) brought against them by affidavit, filed August 18, 1999.  And he shall ever pray.

RESPECTFULLY SUBMITTED,

Walter Penn, #AP-9156

Dated: 8/25/99

cc:  File, w/enclos.

Exhibit-E1

WALTER PENN
#AP-9156
DRAWER K,
DALLAS, PA
18612-0286

TO:  MR. MICHAEL DESSOYE,
Chief County Detective

OFFICE OF DISTRICT ATTORNEY,
OF LUZERNE COUNTY
COURT HOUSE
200 NORTH RIVER STREET
WILKES-BARRE, PA  18711-1001          MEMORANDUM

RE:  Private Criminal-Complaint

Dear Mr. Dessoye:

    Your letter of October 25, 1999, has been received, thankyou for
your response and the information I requested.

    I will take this opportunity to inform you of the following fact's,
On October 17, 1999, I was summoned to Central-Control, where a Lieutenant
Sutliff, informed me (affiant) that he was investigating my request for ad-
ditional criminal-complaint's. This interview lacked a good faith effort of
an objective-investigation. Lieutenant Sutliff's attitude towards affiant,
was contemptuous, intemidating, harassing and threatening. Affiant was in-
formed by Lt. Sutliff, that his report could recommend that affiant be put
in the "hole" based on being a threat to Deitrich, Burnett and officer long,
and not allowed to ever be in the population again; that affiant would be
deprived of everything, except the bare necessity's of life. Lt. Sutliff,
further stated, that affiant was "pissing the District Attorney off," and
that "the District Attorney dosen't want to have anything to do with this
complaint, nor the State Police, nor the Office of Professional Responsibili-
ty, and that the District Attorney even mentioned charging affiant with some-
thing."

    Lt. Sutliff, went on to state, that no one was going to believe an in-
mate over an officer, and that my request for a "Poly-Graph Examination"
meant nothing, that the complaint was going no further than the institution,
                                                    (CONTINUED...)


Exhibit-F

(...CONTINUED)

and that all partie's involved, answered the complaint in an acceptable manner.

Lt. Sutliff, further stated, that the "Policy's" provided by the Department of Corrections, was for the benefit of the officer's ONLY, and that my pursuing a complaint, is doing nothing but drawing attention to myself. There was much moore said, but I'm sure you have the picture of how this so-called investigation went.

Detective Dessoye, your delegating the responsibility of investigating affiant's complaint to the brother-officer's of the defendant's, was utterly inappropriate. In <u>Sagendorf-Teal v. County of Rensselaer</u>, 904 F.Supp. 95(N.D.N.Y.1995) At 97, the Court held: "Testimony described corrections officers as a group to be close and binding, the officers bore significant interest in a favorable outcome for the defense, through their own personal involvement." Delegating the investigation to the department of corrections, has placed affiant at a disadvantage and subject to the whims of the officer's, as was demonstrated on October 4, 1999, I was cited with another alleged misconduct, for being <u>asleep</u> at count time, when no rule exist, stating that "sleeping" at count requires a misconduct; I was sentenced to an additional 15-day's of cell-restriction and lost of priviledge's. In <u>Richardson v. Coughlin</u>, 763 F.Supp. 1228 (S.D.N.Y.1991), the Court held: "That punishment for violating a nonexistent rule denies due process; and, the disciplinary hearing was unconstitutional." This was my second so-called misconduct in about 21-year's, I was at the top of the pay-scale, 23-cent's an hour, I have been demoted to 19-cent's an hour, without any justifiable reason, in order to justify a reduction of my pay, I would have had to been placed in solitary-confinement("hole").

The "NATURE" of the allegation's, may be in some respects, a matter for the Superintendent and/or the Bureau of Professional Responsibility; however, the "ATTENDANT" allegation's, which "FLOW" from the "Nature Of The Complaint," themselves, Constitute violation's of the Penal-Law's of the Commonwealth Of Pennsylvania; and Article 1, Section 7, under the Pennsylvania Constitution, as well as the Constitution of the United States, Amendment's 1, and 14. In <u>O'Keef v. Murphy</u>, 860 F.Supp. 748 (E.D. Wash. 1994), the Court held: "A prisoners correspondence sent to government agencies or official's as a grievance, is protected by his first Amendment Right to petition the government for redress of grievance's." <u>See</u> also, <u>Hines v. Gomez</u>, 853 F.Supp. 329 (N.D. Cal. 1994), At 331: "...(F)iling an inmate appeal (i.e., grievance) falls within the plaintiffs First Amendment Right to petition the government for redress of grievances."

-2-

(CONTINUED...)

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Dallas**
(717) 675-1101
August 12, 1999

**SUBJECT:**      **Unprocessed Grievance Dated 8/05/99**

**TO:**        Walter Penn
            AP-9156

**FROM:**      *Atkins for DHL*
            David H. Larkins
            Superintendent
            SCI Dallas

You failed to follow a grievance procedure and this should be returned to you.

You have made allegations of a serious nature pertaining to staff misconduct. I am turning this over to our Security Department to address these allegations. In the future, please follow proper procedures in DC-ADM 804.

DHL:gac ·

c:    Captain Schoonover
      File-0812.99.Penn



DC 804
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | A148758

| TO: GRIEVANCE COORDINATOR SUPERINTENDENT, MR. VARNER | INSTITUTION SCI-DALLAS | DATE 9/12/99 |
|---|---|---|
| FROM: (Commitment Name & Number) WALTER PENN, AP-9156 | INMATE'S SIGNATURE 3 Rodter Penn | |
| WORK ASSIGNMENT E-Block | QUARTERS ASSIGNMENT E-Block | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Mr. Varner, your assistance is respectfully requested in the following matter.

On the above date, I was summoned to the Central-Control section at the institution, upon my arrival at control, I was informed by LT. Cebrick, that he had been designated by the security-staff, to conduct an investigation into the criminal-complaint's I had filed with the Luzerne County District Attorneys office, regarding staff-member's, i.e., former-Superintendent Larkins, Grievance-Coordinator Kenneth Burnett, and officer Hinzel Deitrich, regarding the violation of my State and Federal Constitutional rights to seek redress of grievance's in the quasi-judicial forum, established by the Department of Corrections for inmates. The interview began at approximately 2:00 P.M., and lasted for approximately 15-20 minute's. (at this time, I was unaware of the fact that officer Deitrich was in my cell, without anyone being present, this action by officer Deitrich was inappropriate(CONT...

B. Actions taken and staff you have contacted before submitting this grievance:

Capt. Pohlidal, and Lt. Cebrick

---

Your grievance has been received and will be processed in accordance with DC-ADM 804.

EXHIBIT- H I.

Signature of Grievance Coordinator                                        Date

(...CONTINUED-page-2)

due to the fact, that he is the subject of an on going investigation, based upon the initiation of a criminal-complaint, filed by the herein named complainant.

Upon my arrival back to G-block, at approximately 2:20 P.M., I was informed by inmate Melvin Pendagrast, that officer Deitrich had entered my cell. I proceeded into the day-room and sat down, on the corner table facing the compound, where I observed Lt. Cebrick, approaching G-Blk., this was approximately 2:30-2:35 P.M., Lt. Cebrick, exited the block at approximately 3:05 P.M., at 3:10, officer Deitrich summoned me to G-blocks control booth and told me to remove my Tv. from off the top-bunk and to pick the towel up from the floor, I replyed okay, I then asked officer Deitrich, why, all of a sudden, he's telling me to take my Tv. down, since its been up there for the past two, almost three-year's, officer Deitrich told me straight out, "You didn't have a complaint against me then." I laughed and walked away.

At approximately 7:30-7:35 P.M., officer Deitrich approached my cell, and ordered me to get dressed. I got dressed and went to G-blocks control-booth, where I was given a pass to central-control. Upon my arrival at central-control, I was handcuffed behind my back and told to sit on the bench, where I remained for a half an hour.

At approximately 8:00 P.M., I was taken into the Captains office, where a Captain Pohlidal, informed me, that I had been given a misconduct, by officer Deitrich, who charged me with "Threatening another person(sic) and using abusive and obscene language to an employee."

I explained to the Captain, what the circumstances were, that led up to the alleged misconduct, and that it was fabricated, false and retaliatory in nature. The Captain agreed, that on the face of the misconduct, something didn't seem right, and that he wasn't going to lock me up for threatening to take money out of someones pocket, if I in fact did that.(I did not).

Exhibit H-2                                    (CONTINUED...)

(...CONTINUED-page-3)

Sgt. Perk, stated to the Captain on my behalf, that he has never heard me use abusive language, whenever I was in his presence. Captain Pohlidal, was somewhat at a lost as to what to do, until he decided to remove me from G-blk., to E-blk., until Lt. Cebrick, and Unit-manager Malloy, could sort things out

### 9/13/99

While exiting the chow-hall from the noon-meal, I approached Lt. Cebrick, who was standing outside of the mess-hall, before I could speak, he asked me why I was moved, I explained to Lt. Cebrick, everything that had occurred since the interview with him. Lt. Cebrick responded, "since you're having trouble on G-Blk., you should stay over there for a couple of day's." (meaning E-Blk.)

I made a request of Lt. Cebrick, to meet with the state troopers or some-one from the District Attorneys office, he advised me that he would take care of it.

### 9/14/99

I was summoned to the office of the hearing-examiner, who subjected me to discipline proceedings in connection with the fabricated, false, malicious, and retaliatory alleged misconduct. I explained to the hearing-examiner, the circumstances leading up to the concocted misconduct. It is common knowledge around the Institution, straight from Mr. Jone's mouth, that "No matter how - wrong an officer might be, he is always right in the hearing-office." In spite of the Department of Corrections Policy, that prohibits retaliation against an inmate for using the grievance-system, I was found guilty of the charge's and sentenced to 15-day's cell-restriction, I even requested a poly-graph examina-tion to prove the truth of the matter, and was denied.

Hearing-examiner Jones, is now a co-conspirator, (silently or otherwise) - in violation of DC-ADM 804 Section V. sub-Section C, paragraph-2, which states -

Exhibit-H 3.    (CONTINUED...)

(...CONTINUED-page-4)

-in relevant part:  "No one shall be punished, retaliated against or other-
wise harmed, for good faith use of this grievance-system."

Mr. Jones, should not be allowed to continue to function in the capacity
of the hearing-examiner, in light of the fact that he is bias towards inmates
and partial towards the officers, he has a hundred-percent conviction rate,
which demonstrate his unfair and unjust consistent pattern of decision making.

Hearing-examiner Jones, will be subject to the following charge's:

1.  Abuse of authority; 2. Tampering with a witness; and 3. wilful, delib-
erate and malicious prosecution, based upon unsworn, fabricated and false-in-
formation provided to authoritie's, for purpose of retaliation, in violation
of State and Federal Law's, and the Department of Corrections Policy, which
prohibit such actions.

Mr. Varner(Superintendent), I hereby formally request, to be put in
touch with assistant district attorney, Richard Grabosky, of the Luzerne
County, District Attorneys office, so that I may Amend my initial-complaint,
to include hearing-examiner Donald Jones, on the above stated charge's, and
officer Long, two-to-ten shift, G-block officer.

I thankyou for your consideration in this matter.

Respectfully Submitted,

/s/ Walter Perk

EXHIBIT- H4.

| DC-135A | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| | **DEPARTMENT OF CORRECTIONS** |
| **INMATE'S REQUEST TO STAFF MEMBER** | INSTRUCTIONS |
| | Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. |

| 1. TO: (NAME AND TITLE OF OFFICER) | 2. DATE |
|---|---|
| Ms. Robin; Superintendent's Secretary | 9/21/99 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| Walter Penn, AP-9156 | Unknown |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| Cell-Restriction | E-Block |

**7. SUBJECT:** STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Ms. Robin:

Attached herewith, is an official-inmate grievance, it is not meant to be an appeal, from a mis-conduct hearing. It is a complaint filed to the Superintendent, concerning the involvement of the hearing-examiner, Donald Jones, in illegal-activity, i.e., **RETALIATING** against me on behalf of an officer whom I have filed Criminal-Complaints against, Grievant-Coordinator Kenneth Burnett, and former Superintendent Larkins, are ~~actions to the @~~ Partie's to the action pending, so sending the grievance to Mr. Burnett, would be inappropriate. This grievance also request the Superintendent, to put me in touch with the District Attorneys Office, in order - that I may Amend the Criminal-Complaint to include Additional-Partie's. Please process my grievance as it is.    Thankyou.

**8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)**

This issue has been addressed via Luzirne Co— D/A's office.

— Officers can check your cell without you being present.

— Grievance number To Right of DC 804 Form is not a Dallas Gri number

☐ TO DC-14 CAR ONLY            ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | **ExHibiT-I** | DATE |
|---|---|---|

WALTER PENN
#AP-9156
SCI-DALLAS
DRAWER K,
DALLAS, PA
                18612-0286

TO:  MR. RICHARD GRABOSKY, ESQ.
     DISTRICT ATTORNEYS OFFICE
     COURT OF COMMON PLEAS
     200 N. RIVERS STREET
     WILKES BARRE, PA  18711

                    RE:   CRIMINAL COMPLAINT(S) FILED
                          PURSUANT TO Pa. R. Crim. P.
                          Rule 106(a).

Dear Mr. Grabosky:

        I am the above named affiant of the above captioned matter, and I am
writing seeking to learn the status of the above captioned matter, initiated
August 18, 1999, and September 19, 1999.  Has there been a disposition in this
action, I would appreciate it very much if you would inform me of same?

        On September 12, 1999, I filed a Grievance to the Superintendent, con-
cerning the concocted misconduct lodged against me by one of the actors in the
aforementioned criminal-complaint(s) for purpose of RETALIATION against me for
filing for the criminal-complaint.  My reason for filing the Grievance was made
very CLEAR and that is, although officers are allowed to conduct cell-searches,
absent the presence of the inmate, it was inappropriate for officer Deitrich,
to search my cell at the time I was being interviewed in connection with his
committing wrongful activitie's against me, he could have planted drugs, a knife,
or any other kind of contraband, that could have gotten me into serious trouble;
but because he was being observed by other inmates, nothing occurred at that that
time.

        The Grievance has been returned to me a total of four(4) time's, with-
out being processed through the Grievance-system, by someone named Robin, who
persist in mis-characterizing my grievance as either an appeal from the decision
of the misconduct-hearing, or a complaint about an officer searching my cell, ab-
sent my presence, neither one of these reasons' are correct.

                                        (CONTINUED...)



-1-

G

**DC-141   PART III**
PROGRAM REVIEW COMMITTEE ACTION
[X] Misconduct Appeal ☐ Periodic Review ☐ Other

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Date of Review | No. from PART I |
|-----------|------|-------------|----------------|-----------------|
| AP-9156 | PENN | SCID | 9-30-99 | A 148758 |

PROGRAM REVIEW COMMITTEE'S DECISION AND ITS RATIONALE

Inmate Penn appeals the misconduct
under section A of the appeal process.

a) There are no procedural violations noted
in the processing of the misconduct.

# Exhibit-K

**DECISION RELATIVE TO HEARING COMMITTEE'S VERDICT**

☐ Not Applicable    [X] Sustain    ☐ Sustain-Amend    ☐ Refer Back For Further Study    ☐ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|-------------------------------------------|------------|------|
| C. Putnam, UM | C. Putnam | 9/30/99 |
| N. Demming, CPM | N. D. | |
| T. STACHELEK | | |

OFFICE OF THE
## DISTRICT ATTORNEY OF LUZERNE COUNTY



PETER PAUL OLSZEWSKI, JR.
DISTRICT ATTORNEY

COURT HOUSE
200 NORTH RIVER STREET
WILKES-BARRE, PENNSYLVANIA 18711-1001
(570) 825-1674 - 825-1675
FAX (570) 825-1572
TDD (570) 825-1860

October 13, 1999

Walter Penn
AP-9156
Drawer K
Dallas PA 18612-0286

Re:       **WALTER PENN SCI RETREAT**

Dear Mr. Penn:

      I have reviewed the complaint that you filed with the office of the District Attorney. I have determined that due to the nature of the allegations, the matter should be referred to the Superintendent of Retreat Correctional Facility, Ben Varner. A copy of your allegations have also been sent to Cliff O'Hara at the Bureau of Professional Responsibility.

      This referral does not mean that charges will be filed.

      Because of the allegations in this complaint, it is my opinion that an investigation is warranted. No specific time frame can be given as to when a decision can be made, as the length of investigations, will vary.

      I would also like to make a correction in reference to Assistant District Attorney, Richard Grabosky. The District Attorney's office <u>does not</u> have an attorney by that name.

Sincerely,

Michael Dessoye
CHIEF COUNTY DETECTIVE

MD/drb
enclosure
cc: Cliff o'Hara, Bureau of Professional Responsibility

