JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

SEP 1 8 2000

MARY E. D'ANDREA, CLERK
Per_____ Deputy Clerk

| | | |
|---|---|---|
| WALTER PENN, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 1:CV-00-0771 |
| BEN E. VARNER, et al., | : | |
| Defendants' | : | (Judge Rambo) |

PLAINTIFFS REPLY BRIEF IN OPPOSITION
TO DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS THE COMPLAINT

I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Walter Penn ("Plaintiff"), an inmate incarcerated
at the State Correctional Institution at Dallas,("SCI-Dallas"), initiated
this action averring claim's under the First, Eighth and Fourteenth Amend-
ment's to the United States Constitution. Defendants' are current and/or
former employee's of SCI-Dallas, and the Secretary/Director of the Depart-
ment of Corrections("DOC"). Plaintiff avers in his complaint, that the
defendants' did conspire and did deprive him of his constitutional right's
to seek redress of his grievance, in the quasi-judicial forum established
by the DOC Consolidated Inmate Grievance Review System,("DC-ADM 804"), by
failing to comply with the established policy of the department of correc-
tions administrative directive pursuant to DC-ADM 804, which govern the
procedures to be followed in processing an inmates grievance; and attempting
to cover the failure up, by untimely responding to two-grievance's, which
precluded Plaintiff from pursuing his administrative remedies; and by not--

-returning to Plaintiff his copy of his grievance, which is required when appealing a possible adverse ruling in the first instance.  Plaintiff further avers, that the defendants' retaliated against him by issuing a fabricated misconduct report, because Plaintiff filed criminal complaint's against prison officials' with the District Attorney of Luzerne County; and changed his prison job, reduced his pay without any due process; Plaintiff was subjected to threats from officer's; denied court access; and forced to continue to suffer from the harmful effect's of the extreme stagnant heat and humidity, i.e., heat-exhaustion, dizziness, light-headedness and nausea, which was the subject of Plaintiffs grievance.

On April 20,2000, Plaintiff filed this instant action, and defendants' waived formal service on May 26,2000, currently before the Court is defendants' motion to dismiss the complaint, filed on July 3,2000, in their motion and supporting brief, defendants' argue that the complaint should be dismissed, because Plaintiff is alleged to have failed to exhaust his administrative remedies, concerning the averment's contained in the complaint, and that Plaintiff has failed to establishe that defendant Horn, violated Plaintiffs constitutional right's.

On July 29,2000, Plaintiff filed a memorandum of law in opposition to defendants' motion to dismiss. In Plaintiffs memorandum at 14, addresses why defendant Horn should not be dismissed from this instant action and why he is culpable; however, defendants' continue to maintain that defendant Horn should be dismissed from the complaint, "because it fails to establish that Horn violated Plaintiffs constitutional rights." This brief is filed in reply to the defendants' reply brief to Plaintiffs memorandum.

## II.    PERTINENT FACT'S

Regarding the liability of defendant Horn, this issue was addressed in Plaintiffs Memorandum of Law, in Opposition to Defendants' Motion to Dismiss the Complaint. See page's 14-15 of Plaintiffs Memorandum of Law. For clarity purposes, the following is included. "Personal Participation" by a Supervisor is not required to establish liability. Some decisions have adopted an overly simplistic characterization of the standard for determining the liability of supervisors. See e.g., Lessman v. McCormick, 591 F.2d 605 (10th Cir. 1979); Maiorana v. MacDonald, 596 F.2d 1072, 1077 (1st Cir. 1979). The liability of supervisory personnel does not depend upon their personal participation in the acts of their subordinates which immediately brought about the violation of the plaintiffs constitutional rights. See, Avery v. County of Burke, 660 F.2d 111, 114 (4th Cir. 1981). The supervisor may not be on the scene and may not even know of the incident in question, yet still be liable to the plaintiff. The issue correctly phrased, is whether the supervisor has done something, or failed to do something, which he ought to have done, which was a proximate-cause of the violation of the plaintiffs constitutional rights. See, Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981); Bowen v. Watkins, 669 F.2d 979, 988-89 (5th Cir. 1982). In Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978), the Court defined the standard of liability for supervisors as follows:

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made ...Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a Constitutional deprivation is also liable.

(CONTINUED...)

(...CONTINUED)

> -The requisite causal connection can be established
> not only by some kind of direct personal participation
> in the deprivation, but also by setting in motion a
> series of acts by others which the actor knows or
> reasonably should know would cause others to inflict
> the constitutional injury.

The crux of the issue is whether the supervisor caused the constitutional violation to be committed by the subordinate, not whether the supervisor participated directly in the unconstitutional act of the subordinate. McClelland v. Facteau, 610 F.2d 693, 695-96 (10th Cir. 1979); Sims v. Adams, 537 F.2d 829 (5th Cir. 1976); Henzel v. Gerstein, 608 F.2d 654 (5th Cir. 1979); Redmond v. Baxley, 475 F. Supp. 1111 (E.D. Mich. 1979); Cook v. City of Miami, 464 F. Supp. 737, 739 (S.D. Fla. 1979). As the discussion of specific theories of liability makes clear, there are a variety of factual circumstances in which the act or omission of a superior is a proximate cause of a subordinates unconstitutional behavior. Defendant Horn, should not be dismissed from the complaint.[1]

---

[1]In April of 1998, a Civil Action was pending in the United States District Court for the Eastern District of Pennsylvania, Captioned, Imprisoned-Citizens Union, et al., v. Milton Shapp, et al., No. 70-3054, Defendant Horn was a subsequent defendant in this action, one of the issue's raised during these proceeding's, inter alia, was the deficient and inadequate Consolidated Inmate Grievance Review System, i.e., the failure of the Grievance-Coordinator to properly process inmate grievance's; and the failure of the grievance-Coordinator to respond to a grievance or respond in a timely-fashion; and the failure of the grievance-coordinator to properly and completely investigate grievance's. It is beyond question, that defendant Horn, was and is, aware of the ineffective functioning of the grievance system, through commonality of representation. The Consolidated Inmate Grievance and Review System, exist in "theory" only and not in actual practice.

III.    QUESTION'S PRESENTED

A.    DOES THE FAILURE OF PRISON OFFICIALS TO
PROPERLY PROCESS AN INMATES COMPLAINT
INTO THE ADMINISTRATIVE GRIEVANCE AND
REVIEW SYSTEM IN COMPLIANCE WITH DC-
ADM 804 RENDER THE EXHAUSTION REQUIRE-
MENT INAPPLICABLE?

B.    DOES THE DENIAL OF ACCESS/ENTRY TO THE
ADMINISTRATIVE GRIEVANCE AND REVIEW
SYSTEM RENDER THE MANDATE OF THE PLRA-
SUBSECTION 1997(e) INAPPLICABLE TO THE
REQUIREMENT OF EXHAUSTION?

IV.    ARGUMENT

THE COMPLAINT SHOULD NOT BE DISMISSED
DUE TO THE FACT THAT THE DEFENDANTS IN
ACCORDANCE WITH THEIR WHIMS DEVIATED
WILFULLY AND KNOWINGLY FROM THE REQUIRED
PROCEDURES TO BE FOLLOWED IN PROCESSING
AN INMATES GRIEVANCE, WHICH ACTION AND/OR
INACTION RENDERED THE PROCESS UNAVAILABLE
TO PLAINTIFF.

Where authorities step out of proposed statutory power and do
illegal or unauthorized act, act is not within jurisdictional phases of
statutory proceeding. See White v. Old York Road Country Club, 178 A. 3, 318-
Pa. 346, 1935, on reargument remanded for hearing. 179 A. 434, 318 Pa. 569.

To confer jurisdiction on an equity court, despite failure to ex-
haust administrative remedies, there must be an absence of an adequate statutory
remedy and the existence of a clear and obviously substantial question of consti-
tutionality. See City of Philadelphia v. Kenny, 369 A.2d 1343, 28 Pa. Cmwlth.-
531, 1977, certiorari denied 98 S.Ct. 401, 434 U.S. 923, 54 L.ED. 2d 281, re-
hearing denied 98 S.Ct. 754, 434 U.S. 1025, 54 L.Ed. 2d 774.

The Defendants' continue to labor under the fatal misconception that
Plaintiff has failed to exhaust his administrative remedies, in a calculated,--

-and deliberate misrepresentation of the facts, thereby, erecting an elaborate maze of artificial restraints, specifically designed to circumvent the truth in this grave matter with sophistic reasoning, in an attempt to divert the Courts attention from the "Core Issue,"" of Plaintiffs complaint, i.e., that Plaintiff was "Denied Access," effective, meaningful or adequate, into the grievance and review system pursuant to DC-ADM 804, established by the DOC for redress of grievances. See Complaint at 2, 6-7, 11; also See copy of DC-ADM 804, attached to the complaint as Exhibit "A." Moreover, Plaintiff complained of the failure of the grievance officer, defendant Burnett, to comply with DC-ADM-804, thereby depriving Plaintiff of his right to seek redress of his grievance; and to receive procedural due process in the grievance system; this complaint was filed with defendant Burnett's immediate supervisor, former superintendent, defendant Larkins, See copy of complaint to defendant Larkins dated August 2, 1999, attached hereto as Exhibit "L" and incorporated herein as though fully set forth; also See Complaint at 7.[2]

---

[2] Exhibit "L" consist of 4-page's, L-1,L-2,L-3 and L-4. Contrary to Defendants' devious assertion at page-3, note-4, of their "reply brief" in support of their "motion to dismiss the complaint," It is apparent that it is the Defendants' who are confused, "a fair reading of Larkin's memorandum dated August-9,1999, is that Larkins is referring to the grievance that was submitted directly to him on August 5,1999." First of all, Plaintiff does not have a "Memorandum" from defendant Larkins dated August 9,1999, nor has Plaintiff ever seen this alleged "Memorandum," what Plaintiff does have from defendant Larkins dated August-9,1999, is the "Response to Official Inmate Grievance," absent a processing number, it is clearly the response to Exhibit's "L-1 L-2 L-3 and L-4," this is an obvious attempt to deceive this Court, due to the fact, that Exhibit "G," dated August 12,1999, attached to Plaintiffs "Memorandum of Law, in Opposition to Defendants' Motion to Dismiss the Complaint," is beyond doubt the response to an "Unprocessed Grievance dated August 5,1999." Was the Defendants' misleading assertion at note 4, of their "reply brief," an honest misrepresentation of the facts.

In regards to Defendants' assertion at (n.3) of their "Reply Brief," in response to Plaintiffs 'Memorandum of Law, in Opposition to Defendants'-Motion to Dismiss the Complaint," the Defendants' state "it is unclear how-Dietrich's possession of the grievance presents a constitutional violation."

The possession of Plaintiffs grievance by Defendant Dietrich, is out-side the purview of DC-ADM 804, where no-provision-exist that allows a corrections officer to have an inmates grievance in their control; thus, this unauthorized possession of Plaintiffs grievance by Defendant Dietrich, at the period in time when the complaint should have been progressing through the administrative grievance and review system, arbitrarily abrogated Plaintiffs Federal and State created right of entitlement, to petition the executive government for redress of his grievance and to receive procedural due process in the administrative scheme. Moreover, the grievance was filed on July 25,1999, Complaint-at 3; on July 30,1999, Plaintiff was sitting in his cell when Defendant Dietrich approached the door, where Plaintiff observed the original and attached copie's of his grievance, Complaint at 4; on July 31,1999, corrections officer Bolker, informed Plaintiff that he (officer Bolker), had engaged in an informal phone-conversation with Defendant Burnett, who stated that "he was throwing the grievance away, due to the inclusion of the race-issue." Complaint at 6.

Plaintiffs observation of Defendant Dietrich in possession of his grievance; combined with the information provided by officer Bolker; and the subsequent failure of Defendant Burnett, to respond to the grievance in a timely-fashion, demonstrated to Plaintiff that a conspiracy,(silently or otherwise) existed at this point, being engaged in by Defendants' Burnett and Dietrich, to deny and in-deed did deprive Plaintiff of his Federal and State guaranteed right, to seek redress of his grievance and to receive procedural due process, Complaint at 1-2, 11.

The Court held in <u>Gluth v. Kansas</u>, 951 F2d 1504 (9th Cir. 1991), "It
is the state's burden to provide meaningful access and to demonstrate that its
chosen method is adequate." at 1508.    Plaintiff filed his grievance on July 25,
1999, and placed it in the Unit-Mail-Box, officer's assigned to work the Units,
have <u>no-key's to the mail-boxe's</u>, <u>how</u> did Defendant Dietrich, come to have
Plaintiffs grievance in his possession, the Defendants' have failed to address
this issue, Complaint at 3-4.    In order for Plaintiff to have exhausted his
administrative remedies, he would have at first been afforded the opportunity
to do so (he was not), which would have been accomplished had prison official's
complyed with DC-ADM 804 in its entirety (they did not), i.e., filing the com-
plaint into the process; return to Plaintiff his copy of the complaint; respon-
ding in a timely-fashion; assigning to the complaint a grievance number, <u>See,</u>
Exhibit "C" attached to the complaint, stating, "no number provided," also-
<u>See</u>, Exhibit "G" attached to Plaintiffs "Memorandum of Law, in Opposition to-
Defendants' Motion to Dismiss the Complaint," which states "Unprocessed Grie-
vance." There are <u>no-safety-measure's</u> in place, to insure that an inmates com-
plaint is delivered to the proper official, or to insure that an inmate receives
a copy of his grievance, or to insure that an inmate receives a response to his
grievance in a timely-fashion, instead, such proceedure's are left to the whims
of corrections officer's, which are wholly inadequate.    <u>See</u>, <u>O'Keefe v. Murphy</u>,
860 F.Supp. 748 (E.D. Wash. 1994), the Court made clear that  "A prisoner's-
complaint/correspondence sent to government agencies or officials as a grie-
vance, is protected by his First Amendment right to petition the government for-
redress of grievances." The Court further stated that  "the Prison's policy of
reading 'grievance mail' to government agencies and personnel is invalid under
the  <u>Turner</u>  standard."

The Court in O'Keefe further held that "To permit prison officials to read prisoners 'grievance mail' would cause the same chilling of meritorious petitions as with officials' reading mail to attorneys or courts." At 752; also in O'Keefe, the Court went on to explain that "A plaintiff has no alternative means of exercising his right; even though he is permitted to send privileged mail to courts and attorneys and to file grievances within the prison, '(t)he First Amendment grants an unrestricted right to petition the government for redress of grievances'." And finally, the Court granted summary judgement to the plaintiff, although only the defendants' moved for summary judgement. At (760).

In regards to (n.2) of Defendants' "Reply Brief," in response to Plaintiffs "Memorandum of Law, in Opposition to Defendants' Motion to Dismiss the Complaint," Contrary to Defendants' assertion at n.2, that "defendant Barnett received plaintiffs complaint on July 27, 1999, and responded to it on August 9, 1999, which would be (just) on time) within which to respond to an inmates complaint." The Defendants' put forth a novel-proposition which has no basis in reality, Plaintiff didn't receive any response until August 23, 1999, See Complaint at 10., and this only after Plaintiff had filed a grievance against defendant Burnett, with defendant Larkins, See Complaint at 7. However, the Defendants' conveniently skip-over July 26, 1999, in order to deceitfully claim that Plaintiffs grievance was responded to in the required time-period.

July 25, 1999, was a sunday, mail is picked-up every-night here at the prison by corrections officers, and carried to the Central-Control section at the prison, where corrections officers sort-out the mail; inter-institutional mail sent to prison officials, is immediately placed into individual cubby-holes; that are situated approximately 3-feet away from the time-clock, that all prison official's must punch upon their arrival at the institution, and conveniently—

=retrieve their mail from their own private cubby-hole; which are assigned to all prison personnel. In this case, Plaintiff did observe defendant Burnett, enter the prison on Monday July 26,1999, proceed to central-control; punch the time-clock; pick-up his mail and proceeded back-out of the prison to his office; with the grievance in his possession, on July 26, 1999,

The remaining arguments contained in the Defendants' "Reply Brief" in support of their motion to dismiss, is repetitive of the argument presented in their Brief in support of their motion to dismiss, which Plaintiff addressed in his memorandum of law in opposition to defendants' motion; and above herein this instant document, i.e., the PLRA's mandate, which requires the exhaustion of all available administrative remedies. Plaintiff has never alleged that the administrative process did not provide the relief sought, nor has Plaintiff ever alleged that the administrative remedies were insufficient or inadequate to afford relief; but what Plaintiff has alleged in his complaint; memorandum of law in opposition to defendants' motion to dismiss; and herein this instant document, is the fact that he was "Denied Access" to the grievance system, whereby redress of grievances could be had; and, that Plaintiffs ability to appeal was interfered with, by the wilful and misconduct of those prison official's, that are assigned to regulate the process, who knowingly and intentionally rendered the grievance system "Unavailable" to him. Therefore, the exhaustion requirement of the PLRA § 1997(e) is inapplicable in this case, as Plaintiff was denied entry into the system, in total-compliance with DC-ADM 804.

Indeed, a prison cannot fulfill its constitutional obligation to provide inmates with meaningful access to the courts, if those seeking access are subject to retaliatory harassment, such as Plaintiff was. The Defendants' retaliated against Plaintiff, by failing to properly process his grievance's,==

"See Exhibit "C," attached to the complaint, no-number supplied; Exhibit "G," attached to Plaintiffs memorandum of law, in opposition to defendants' motion to dismiss, captioned unprocessed-grievance, these function's are the responsibili of prison official's; by confiscating or otherwise failing to return to Plaintiff, his copy of the complaint; by throwing the grievance-away or otherwise disposing of it, outside the requirement's of DC-ADM 804; by threatening Plaintiff that his complaint was not leaving the prison; by filing two-false-misconduct charge's against him; by twice being subjected to disciplinary action; by threatening to place him in solitary-confinement; by twice being transfered to other area's of the prison, subsequent to the initiation of these instant proceeding's; by changing his job and reducing his pay, absent any due process; by informing Plaintiff, that the issue was being addressed by the Luzerne County-District Attorneys office, thereby thwarting any further attempts by Plaintiff to appeal or otherwise pursue the matter's presented in the complaint; and finally, all of the foregoing fact's, worked together to render the grievance-system, unavailable to Plaintiff; all of the foregoing action's and/or inaction's engaged in by the defendants' did interfere with and prevent Plaintiff from prosecuting this very matter on appeal's. "It is the state's obligation to provide for prisoners' court access, and court access systems must be evaluated as a whole."See Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3rd Cir. 1993). In Martin v. Ezeagu, 816 F.Supp. 20 (D.D.C. 1993), the Court held that "The right of Court-access entails not only freedom to file pleadings but also freedom to employ, without retaliation or harassment, those accessories without which legal claims cannot be effectively asserted." (24, citing Ruiz v. Estelle, 679 F.2d 1115,-1153 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1982)(emphasis supplied).

It is well settled that confiscation of an inmates legal papers in retaliation for filing lawsuits violates an inmates right to access to the court-

-Shabazz v. Vacco, No. 97-371, 1998 WL 901737(S.D.N.Y. December 28,1998); Caputo v. Fauver, 800 F.Supp. 168, 171 (D.N.J.), aff'd, 995 F.2d 216(3rd Cir.- 1992); see Crawford-El v. Britton, 951 F.2d 1314 (D.C. Cir. 1991), cert. denied, 506 US 818 (1992); Wright v. Newsome, 795 F.2d 964 (11th Cir. 1986).

If prison officials transfer a prisoner in retaliation for his writ-writing activities, in whole or in part, this transfer gives rise to a retaliation claim under 42 U.S.C. § 1983. See Castle v. Clymer, No. 95-2407, 1998 - WL 400093, *20(E.D. Pa. June 30,1998); Frazier v. DuBois 922 F.2d 560(10th Cir. 1990)(holding that prisoner's transfer gives rise to a retaliation claim for the exercise of his First Amendment right); Meriwether v. Coughlin, 879 F.2d 1037, 1045(2d Cir. 1989)(same); Milhouse v. Carlson, 652 F.2d 371, 373-74(3d Cir. 1981). For example, in Thaddeus-X v. Blatter, No. 95-1837, 1999 WL 114379(6th - Cir. 1999), the United States Court of Appeals for the Sixth Circuit held that, Plaintiffs retaliation claim withstood Defendants' motion to dismiss because Plaintiff sufficiently alleged facts that, if true, would constitute retaliation because of the exercise of his constitutional right to access to the courts.

In Thaddeus-X, Plaintiff, a jailhouse lawyer, claimed that he was retaliated against for his efforts to litigate a civil rights claim on another prisoner's behalf. In support of this claim, Plaintiff alleged that beginning in 1994-when the case was filed-prison officials began to harass him in an attempt "to hinder the legal proceeding against the warden and other prison officials." Id. at*2. Specifically, Plaintiff alleged that prison officials refused to pass legal papers between himself and his "client;" refused to provide them with paper and/or pens; brought him cold food; and, eventually transferred Plaintiff into a segregated unit. Id. at *2-3.

After considering Plaintiff's allegations, the Sixth Circuit reversed--

—the lower court's granting of summary judgement in favor of Defendants, finding that the Plaintiff set forth sufficient facts to state a claim for retaliation under Section 1983 for exercising his constitutional protected right of meaningful access to the courts. Id. at *4. In reaching its decision, the court under went a detailed analysis of the facts and allegations necessary to give rise to a retaliation claim under Section 1983 in the context of "accessing the courts." First, the Thaddeus-X court determined that although an inmate has no right to be a "jailhouse lawyer," an inmate has a right to assert his own rights, as well as the rights of others to access the courts in support of his retaliation claim. Id. at *12.

The court further found that the inmate must allege some sort of adverse action in order to state a retaliation claim under 42 U.S.C. § 1983. Indeed, the court reasoned that because the Plaintiff in Thaddeus-X alleged "(h)arassment, physical threats, and transfer (to a different area of the prison)" it was likely that this conduct would have a strong effect in deterring the exercise of Plaintiff's constitutionally protected activity. Id. at *18.

Finally, the court in Thaddeus-X held that Plaintiff had established a retaliation claim pursuant to Section 1983 because he sufficiently showed a causal connection between the protected actions and the adverse conduct. In reaching its decision, the court reasoned that "(c)ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals is appropriate." Id. at *19. Because the Plaintiff in Thaddeus-X set forth a number of specific allegations in his complaint, which gave rise to a causal connection between his protected activity and adverse treatment, the court reversed the grant of summary judgement in favor of Defendants on Plaintiff's retaliation claim. Id.

For example, in Moore v. Overall, No. 95-5215, 1998 WL 852923(N.D.Ill. December 4,1998), Plaintiff alleged that prison officials retaliated against him by bringing false disciplinary charges against him, and denying his grievances because he filed a lawsuit against prison officials in federal court. Plaintiff's retaliation claim against the prison officials survived summary judgement, because the court found that Plaintiff created a genuine issue of fact, as to whether the conduct of prison officials was in retaliation for the lawsuit that he filed against them. Id. at *4. In reaching its decision, the court stated the following:  "(a) prisoner has the fundamental constitutional right to access to the courts, and may maintain an action for damages against any prison official who retaliates against him, for exercising that right to judicial relief." Id. (citing Bounds, 430 U.S. at 821).

As discussed earlier, to state a claim for retaliation, Plaintiff only must allege that he engaged in a constitutionally protected activity; that Defendants' retaliated against him for doing so; and, that the protected activity is the cause of the retaliation. Anderson v. Davila, 125 F.3d 148, 161(3d Cir. 1997). The retaliatory acts need not be severe to be actionable under Section-1983. Anderson v. Horn, 1997 U.S. Dist. LEXIS 3824(E.D. Pa. March 28, 1997); Quinn v. Cunningham, 879 F.Supp. 25, 28(E.D. Pa. 1995), aff'd 85 F.3d 612(3d Cir. -1996); see e.g., Rivera v. Chesney, No. 97-7547, 1998 U.S. Dist. LEXIS 14619-(E.D. Pa. September 15, 1998)(holding that Plaintiff alleged sufficient facts-to state a claim for retaliation against prison officials when he was verbally-harassed; threatened; and denied an evening meal in retaliation for filing-grievances against prison officials).  Also See Williams v. Meese, 926 F.2d 994-(10th Cir. 1991), the Court held:  "An allegation that the Plaintiff was transfered from one job to another in retaliation for administrative grievances or lawsuits, stated a First Amendment claim."

Finally, in <u>Hines v. Gomez</u>, 853 F. Supp. 329 (N.D. Cal. 1994), the Court held "(F)iling an inmate appeal (i.e., grievance) falls within the Plaintiff's first amendment right to petition the government for redress of grievance's," at 331.

### V.    CONCLUSION

For the foregoing reasons, Plaintiff Walter Penn, respectfully request this Honorable Court, in the interest of justice, to deny Defendants' Motion to Dismiss the Complaint.  And he shall ever pray.

RESPECTFULLY SUBMITTED,

Walter Penn, Pro Se.
#AP-9156
SCI-Dallas
1000 Follies Road
Dallas, Penna. 18612-0286

Dated: 9/13/2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WALTER PENN,                          :        CIVIL ACTION

      Plaintiff                       :

   v.                                 :        No. 1: CV-00-0771

BEN E. VARNER, et al.,                :

      Defendants'                     :        (JUDGE RAMBO)

## VERIFIED STATEMENT

    I, Walter Penn, pro se Plaintiff in this instant action, declare
under penalty of perjury, pursuant to Title 18 Pa. C.S. § 4904, relating
to (Unsworn Falsification To Authorities), that the fact's stated in Plaintiffs
"Reply Brief in Opposition to Defendants' Reply Brief in Support of Their
Motion to Dismiss the Complaint," are true and correct, to the best of Plain-
tiff's information, knowledge and belief.

RESPECTFULLY SUBMITTED,

_Walter Penn_

Walter Penn, pro se.

Dated: _9/13/2000_

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PENN, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 1: CV-00-0771 |
| BEN E. VARNER, et al., | : | |
| Defendants' | : | (JUDGE RAMBO) |

## CERTIFICATE OF SERVICE

I, Walter Penn, Plaintiff pro se., hereby certify that on this date, I caused to be served the foregoing "Reply Brief," in Opposition to Defendants' "Reply Brief," in support of their "Motion to Dismiss the Complaint," by depositing a copy of the same in the United States Mail, postage prepaid, at the State Correctional Institution at Dallas, Pennsylvania, addressed to the following person(s):

Maryanne M. Lewis
Deputy Attorney General

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA. 17120

RESPECTFULLY SUBMITTED,

Walter Penn, Plaintiff

Dated: 9/13/2000

**DC-135A**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER)<br>Mr. David H. Larkins, Superintendent at SCI-Dallas | 2. DATE<br>8/2/99 |
|---|---|

| 3. BY: (INSTITUTIONAL NAME AND NUMBER)<br>Walter Penn, AP-9156 | 4. COUNSELOR'S NAME<br>UnKnown |
|---|---|

| 5. WORK ASSIGNMENT<br>G-Block-Utility | 6. QUARTERS ASSIGNMENT<br>G-Block, 78-Cell |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

Mr. Larkins:  There are no formal grievance applications on G-Blk., F-Blk., or at Control. Therefore, I respectfully request, that this Request-Form be construed as a Formal-Grievance.  The following matter seeks redress, to the DEPRIVATION of the herein named Grievants Constitutionally guaranteed right to procedural due process, by the FAILURE of the Grievance-Coordinator, Mr. Kenneth Burnett, to COMPLY with the established Policy of the Department of Corrections Administrative Directive-Requirements, that GOVERN the PROCEDURES to be FOLLOWED in PROCESSING an inmates Grievance.  It is hereby avered, that the Grievance-Coordinator, Mr. Kenneth Burnette, did Totally-ABANDON, the REQUIREMENTS of Administrative Directive 804, section 7, by "Throwing-Away," this Grievants legally-filed, meritorious complaint, ABSENT the pre-requisite DUE PROCESS guarantee's, thereby, causing this Grievant- -

(CONTINUED ON ATTACHMENT)

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Exhibit's-L-1

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|

(REQUEST FORM GRIEVANCE-CONTINUED-PAGE-2)

— to continue to suffer from the issue's that were presented in the Grievance, to be corrected. Said action ("Throwing-Away") and/or inaction by Mr. Burnette, has caused this Grievant to be subjected to Cruel and UnUsual Punishment, in violation of the 8th Amendment to the United States Constitution, which prohibits such conduct. In support of the foregoing, the following is presented

On or about July 12, 1999, upon consideration of the Administration at SCI-Dallas, PA., Two-floor-model Fan's, were placed on G-Block, for the benefit of (All) the inmates in the Unit. The Fan's were initially placed in strategic-positions by the maintenance personel, one was placed on the top-range, at the back-center of the Unit, and one was situated at the front of the Unit, to the right of center. The Fan's remained in these positions for approximately two-week's, with no complaints from anyone, inmates or officers. Then all of a sudden, on July 22, 1999, the officers of the two-to-ten shift, decided to move the Fan, from its strategic position at the front right-side of the Unit, to the far left-corner of the Unit, beside the water-fountain and under the top-range, with the action of the Fan, directed towards the cell's of six-caucasian-inmates, thereby, DEPRIVING the majority of the inmates at the front-section of the Unit, from receiving the benefit of the Fan.

After approximately two-week's, the officers of the two-to-ten shift, claimed that, "They cannot see down the range," that is patently-absurd, since the Fan measures three-feet in diameter and was only covering approximately six-to-twelve inche's of a window measuring ten-to-twelve-feet in length and approximately three-to-four-feet in width, clearly the officers of the two-to-ten shift have abused their discretion, and are in need of administrative-assistance, in regards to strategic placement of the Fan, whereby, (ALL) of the inmates at the front-section of the Unit, would benefit from its purpose.

A few inmates have respiratory problems, and are sleeping on the top-bunk with no ventilation, as was the case with Bernard Lewis, who passed away on July 5, 1999, from heart failure, combined with a blanket of extreme stagnant heat and humidity, which induces a suffocating effect and no doubt, contributed to his heart-attack and ultimate demise.

On July 23, 1999, myself and a couple of other block-workers, attempted to put the Fan back to its original-position, at which time we were told, that the

(CONTINUED ON ATTACHMENT

1 -2

(REQUEST FORM GRIEVANCE-CONTINUED-PAGE-3)

   - Fan had to stay in the corner, facing the odd-numbered cells on the Unit, because (all of a sudden) the six-to-two shift, can't see down the block.

   Obviously, the two-to-ten shift has sought and received the support of the six-to-two shift, this is why an administrative resolution to the problem was desired and required, as the officers on G-block, cannot be relied upon to be just and fair in this matter.

   Grievant herein named, sought a MEMORANDUM from the upper level of administration, that would guide, direct and assist, the officers of G-block, on where to place the fan, whereby (ALL) of the inmates would benefit from its purpose, as the administration intended, and not just the caucasian residents of the Unit.

   The foregoing are the fact's, that were presented in this Grievants complaint to the Grievance-Coordinator.

   On July 30, 1999, at approximately 2:30 PM, the herein named Grievant was sitting in his cell, when officer Deitrich, approached the door, in his hand he displayed the original and the accompanying copie's, of this inmates Grievance, officer Deitrich stated, in anger, "The fan is going to stay in the corner under the range, because he had triped over the cord." NOTE: officer Deitrich claims that he was tripping over the cord, the other officers claim, that they couldn't see down the block. Both of these reason's are patently absurd, however, both of these claimed implied security reason's, could have been corrected, without moving the fan from its strategic-position.

   On July 31, 1999, the herein named Grievant, was informed by an officer, that he had engaged in an informal phone-conversation with Mr. Burnette, who, according to the officer, stated, "Had Penn not included the race issue in his Grievance, he would have caused the MEMORANDUM to be issued."

   The Grievance-Coordinators personal opinion, in no way JUSTIFIE'S the total and complete ABANDONMENT of the Department of Corrections Requirements, that GOVERN Grievance-PROCEDURE'S and POLICY, nor doe's his opinion allow him to DEPRIVE GRIEVANT of his CONSTITUTIONALLY GUARANTEED RIGHT TO PROCEDURAL DUE PROCESS and EQUAL PROTECTION under the 14th AMENDMENT to the CONSTITUTION of the UNITED STATES, or to subject Grievant to Cruel and Unusual Punishment, by his action and/or inaction, which is prohibited under the 8th AMENDMENT to the CONSTITUTION of the UNITED STATES.

L-3

(REQUEST FORM GRIEVANCE-CONTINUED-PAGE-4)

Grievant herein named, neglected to mention above herein, that it was the officer who engaged in the phone-conversation with Mr. Burnette, who informed Grievant, that Mr. Burnette had "Thrown-Away" Grievants complaint, because of the refference to race.

Absent a proper and adequate investigation into a Grievants claim's, there is no provision in the Department of Corrections guidelines, that allows the Grievance-Coordinator to "Throw-Away" a Grievance, based upon the Grievance-Coordinators personal opinion, that a particular issue should or should not be included in the Grievance.

By "Throwing-Away," (by way of officer Deitrich) Grivants complaint, Mr. - Burnette, did ABDICATE his Duty/Responsibility, entrusted to him by the Superintendent of SCI-Dallas, to enforce the policie's of the Department of Corrections Requirements, that Govern the Processing and resolutions of inmate Grievances.

Mr. Burnette, by his actions and/or inactions, has demonstrated an attitude of Deliberate Indifference, for the well-being of this Grievant, by causing him to be continuosly subjected to the harmful-effects of the extreme stagnant-heat and humidity, i.e., heat-exhaustion, dizziness, lightheadedness, headaches and nausea.

L-4