

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PENN, | : | CIVIL ACTION NO. 1:CV-00-0771 |
| Plaintiff | : | |
| v. | : | |
| BEN E. VARNER, et al., | : | (Judge Rambo) |
| Defendants | : | |

FILED
HARRISBURG, PA
FEB 2 0 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## MEMORANDUM

### Background

Walter Penn, an inmate at the State Correctional Institution Dallas, Pennsylvania (SCI-Dallas), filed this civil rights action pursuant to 42 U.S.C. § 1983. Along with his complaint, Plaintiff submitted an application requesting leave to proceed in forma pauperis under 28 U.S.C. § 1915. By order dated May 8, 2000, Plaintiff's in forma pauperis application was construed as a motion to proceed without full prepayment of fees and costs and was granted.

Named as Defendants are Martin Horn, Secretary of the Pennsylvania Department of Corrections (DOC), and the following SCI-Dallas officials: ex-Superintendent David Larkins, Superintendent Ben Varner, Grievance Coordinator Kenneth Burnett, Unit Manager Bonita Malloy, Hearing Examiner Donald Jones,

and Correctional Officers Hensyl Dietterick, Robert Long, David CeBrick and Ned Sutliff. Plaintiff states that on July 25, 1999, he prepared a written inmate grievance regarding the conditions of his confinement and placed it in his housing unit's mailbox. Five days later, Correctional Officer Dietterick approached Plaintiff's cell, "in his possession he displayed the original and attached copie's [sic], of Plaintiffs [sic] legally-filed official inmate grievance." (Complaint ¶ IV(4).)[1]

Plaintiff asserts that on the following day he was informed by non-defendant Correctional Officer Bolker that Grievance Coordinator Burnett had indicated that because Plaintiff's grievance "included the race issue," it would be thrown away. (Complaint ¶ IV(6).) Based on the information provided by Bolker, Plaintiff filed a second grievance, which was sent directly to Superintendent Larkins on August 12, 1999. The second grievance sought relief based on Burnett's purported failure to respond. However, it is noted that Plaintiff's complaint acknowledges that Burnett provided an untimely and purportedly fabricated response to Plaintiff's initial grievance on August 9, 1999.

---

[1] Penn adds that Dietterick's possession of the grievance was a clear violation of institutional policy.

2

After Larkins allegedly failed to respond to the second grievance, Plaintiff filed a private criminal complaint with the Luzerne County District Attorney's office on August 18, 1999. Two days later, he received Larkins' answer to the second grievance.[2] The response concluded that there was no basis for administrative relief since a review of institutional records showed that Plaintiff never filed an initial grievance with Burnett. Plaintiff sent a reply to Larkins, arguing that since Burnett had already provided an untimely response to the initial grievance, it had obviously been submitted. His complaint asserts that based on the above events, it became clear that Burnett, Larkins and Dietterick had engaged in a "Tacit-Conspiracy" for purposes of denying him access to the courts, subjecting him to unconstitutional conditions of confinement and violating his constitutional due process and equal protection rights. (Complaint ¶ 11.)

On September 12, 1999, Plaintiff was summoned to the SCI-Dallas central control area where he was informed by Lieutenant CeBrick that said Defendant would be conducting an investigation into the allegations underlying his private criminal complaint. CeBrick proceeded to interview Plaintiff for approximately

---

[2] Plaintiff indicates that Larkins' response was solely prompted by his initiation of the private criminal complaint.

3

twenty minutes. During this same time frame, Defendant Dietterick allegedly entered Plaintiff's cell. Later that afternoon, Dietterick, after conferring with CeBrick, returned to Plaintiff's cell and ordered him to remove his television from the top bunk. Dietterick allegedly acknowledged that this action was being taken solely in retaliation for Plaintiff's submission of the private criminal complaint.[3]

Shortly thereafter, Plaintiff contends that he was issued a falsified, retaliatory misconduct claiming that he had used threatening and abusive language towards Dietterick. Two prison officials, Captain Pohlidal and Sergeant Perk, allegedly concluded that the disciplinary charges were suspicious and in an effort to keep the Plaintiff separated from Dietterick, had Plaintiff transferred to a different cellblock. The next day, CeBrick purportedly advised Plaintiff that he should not return to his old cellblock until things cooled down.

On September 14, 1999, a misconduct hearing was conducted. Based on written statements by Dietterick and Correctional Officer Long, Disciplinary Hearing Officer (DHO) Jones found Plaintiff guilty of using abusive language to an employee, but dismissed the charge of threatening another person. Five days

---

[3] Plaintiff notes that other inmates occupying top bunks were allowed to keep personal televisions mounted to their top bunks.

4

later, Plaintiff submitted a second private criminal complaint to the Luzerne County District Attorney, this time maintaining that DHO Jones and Correctional Officer Long also conspired to violate his constitutional rights. On October 17, 1999, Plaintiff was interviewed by Lieutenant Sutliff, who was assigned to investigate his latest criminal complaint. Sutliff allegedly threatened Plaintiff with placement in solitary confinement, adding that no one would ever believe his version of the events at issue.

Plaintiff was subsequently transferred to a lower paying institutional work assignment. His complaint next asserts that Unit Manager Malloy, who is described as being responsible for supervising and approving Plaintiff's work assignments, and Lieutenant CeBrick conspired to ignore his complaints of a retaliatory job reassignment and reduction in pay. Plaintiff's complaint seeks injunctive and declaratory relief, as well as compensatory and punitive damages. Presently pending is Defendants' motion to dismiss (Doc. 9). The motion has been fully briefed and is now ripe for consideration.

**Standard: Motion to Dismiss**

In rendering a decision on a motion to dismiss, a court must accept the veracity of the plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236

5

(1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). Finally, it is well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). This court will now discuss Defendants' motion

6

in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Discussion**

Defendants assert that they are entitled to an entry of dismissal because Plaintiff failed to fully exhaust his available administrative remedies. The motion additionally argues that the claims against Secretary Horn are meritless because they are improperly premised on a theory of <u>respondeat</u> <u>superior</u>.

With respect to their initial argument, Defendants state that dismissal is appropriate under 42 U.S.C. § 1997e(a) because Plaintiff "did not exhaust his administrative remedies through the prison's review process concerning both his grievances and the misconduct." (Doc. 10, at 4.) They assert that Plaintiff "has also failed to provide documents that show he grieved the allegations contained in his complaint regarding the conduct of the officers, the change in his prison job and subsequent loss of pay." (<u>Id.</u>)

Section 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal

7

> law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief, or both. Fortes v. Harding, 19 F. Supp.2d 323, 325 (M.D. Pa. 1998). Prisoners are required to exhaust available administrative remedies prior to initiating a prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law. The exhaustion requirement is mandatory regardless of whether the administrative remedies afford the inmate plaintiff the relief sought in his federal court action. Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). Furthermore, the exhaustion requirement of § 1997e(a) applies to claims not only involving actual prison conditions, but also to allegations of excessive force as well as "all prisoner lawsuits." Booth v. Churner, 206 F.3d 289, 298 (3d Cir. 2000), cert. granted, 121 S.Ct. 377 (2000).

Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any other federal law. The DOC has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a

8

written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Chief Hearing Examiner.

Effective May 1, 1998, the DOC amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "compensation or other legal relief normally available from a court." (DC-ADM 804-4, issued April 29, 1998.) Further, the amendment requires that the "[g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator within fifteen (15) days after the events upon which the claims are based," but allows for extensions of time for good cause, which "will normally be granted if the events complained of would state a claim of a violation of a federal right." Id.

Plaintiff's opposing brief reiterates that he initially filed a grievance regarding the conditions of his confinement with SCI-Dallas Grievance Coordinator Burnett. A copy of Burnett's response indicates that Plaintiff's grievance regarded his disagreement with the placement of two fans within the

9

cellblock. (Doc. 1, Ex. B.) Plaintiff filed a second grievance with Superintendent Larkins concerning Burnett's alleged mishandling of the initial grievance.

Plaintiff acknowledges that Burnett responded to his initial grievance on August 9, 1999. He similarly admits that Larkins provided a response to the second grievance on August 20, 1999. Although Plaintiff contends that both unfavorable responses were improper, a review of the record provides no indication whatsoever that Plaintiff pursued his additional available administrative remedies of appealing those decision. Rather, the Plaintiff elected to initiate private criminal complaints with the Luzerne County District Attorney's office rather than to file further administrative appeals regarding those two grievances.

Attached to Plaintiff's complaint is a copy of a third institutional grievance which relates to his loss of institutional employment and related reduction of pay. (Id. Ex. D.) In addition, Plaintiff's opposing brief includes documentation showing that he appealed the finding of guilt rendered at his misconduct hearing to the prison's Program Review Committee (PRC). (Doc. 13, Ex. K.) Plaintiff has also demonstrated the he submitted a grievance to Superintendent Varner regarding the events surrounding Lieutenant CeBrick's investigation, including Dietterick's

10

purported entry into his cell and his assertions of conspiracy and retaliation. (Id. Exs. H-1 - H-4.)

However, as was the case with his two earlier grievances, Plaintiff's subsequent appeals and grievances were also not fully exhausted within the DOC. Specifically, while Plaintiff clearly initiated grievances regarding most, if not all, of his present allegations, none of those claims were ever presented to the DOC's Chief Hearing Examiner. Consequently, based on Plaintiff's failure to fully complete the DOC's grievance review process, his complaint will be dismissed without prejudice for failing to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). See Ahmed v. Sromovski, 103 F. Supp.2d 838, 844 (E.D. Pa. 2000); Hanson v. Chesney, 37 F. Supp. 2d 399, 401 (E.D. Pa. 1999). An appropriate order will be issued.[4]

/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 20, 2001.

---

[4] In light of the court's conclusion, a discussion regarding Defendants' respondeat superior argument is unnecessary.

11

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

February 20, 2001

Re: 1:00-cv-00771   Penn v. Varner

True and correct copies of the attached were mailed by the clerk to the following:

```
Walter Penn
SCI-D
SCI at Dallas
AP-9156
Drawer K - Follies Rd.
Dallas, PA  18612-0286

Maryanne M. Lewis, Esq.
Office of the Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120
```

```
cc:
Judge                         (X )              (X ) Pro Se Law Clerk
Magistrate Judge              ( )               ( ) INS
U.S. Marshal                  ( )               ( ) Jury Clerk
Probation                     ( )
U.S. Attorney                 ( )
Atty. for Deft.               ( )
Defendant                     ( )
Warden                        ( )
Bureau of Prisons             ( )
Ct Reporter                   ( )
Ctroom Deputy                 ( )
Orig-Security                 (X )
Federal Public Defender       ( )
Summons Issued                ( ) with N/C attached to complt. and served by:
                                  U.S. Marshal ( )    Pltf's Attorney ( )
Standard Order 93-5           ( )
Order to Show Cause           ( ) with Petition attached & mailed certified mail
                                  to: US Atty Gen  ( )   PA Atty Gen ( )
                                      DA of County ( )   Respondents ( )
Bankruptcy Court              ( )
Other_____  ( )
```

MARY E. D'ANDREA, Clerk

DATE: February 20th, 2001					BY: _____
								Deputy Clerk